UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALANA KARPOFF SCHWARTZ,<br>Individually and on behalf of a class,<br><br>Plaintiff,<br><br>v.<br><br>INTIMACY IN NEW YORK, LLC, INTIMACY MANAGEMENT COMPANY, LLC and DOES 1-10,<br><br>Defendants. | Case No. CV 13-CV-5735-PGG<br><br>**FIRST AMENDED COMPLAINT<br>– CLASS ACTION** |

## INTRODUCTION

1. Plaintiff Alana Karpoff Schwartz ("Plaintiff"), individually and on behalf of a class defined herein, brings this action against Intimacy in New York, LLC and Intimacy Management Company, LLC ("Defendants") to secure redress for violations of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA").

2. The operative provision of FACTA, codified at 15 U.S.C. §1681c(g), provides that:

> No person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

3. Section 1681c(g) is "not ambiguous." It "expressly prohibits printing more than the last five digits of the credit/debit card numbers and also prohibits printing the card's expiration date." Pirian v. In-N-Out Burgers, 06-1251, 2007 WL 1040864, *3 (C.D. Cal. Apr. 5, 2007); accord, Iosello v. Leiblys, Inc., 502 F. Supp. 2d 782 (N.D. Ill. 2007); Follman v.

Hospitality Plus of Carpentersville, Inc., 532 F. Supp. 2d 960 (N.D. Ill. 2007); Follman v. Village Squire, Inc., 542 F. Supp. 2d 816 (N.D. Ill. 2007); Korman v. Walking Co., 503 F. Supp. 2d 755 (E.D. Pa. 2007); Ramirez v. MGM Mirage, Inc., 524 F. Supp. 2d 1226 (D. Nev. 2007); *see also In re The TJX COMPANIES, INC.*, MDL No. 1853., No. 07-md-1853-KHV, 2008 WL 2020375, at *1 (D. Kan. May 9, 2008) (citing 15 U.S.C. § 1681c(g)(1)) ("FACTA prohibits retailers who accept credit or debit cards from 'print[ing] more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.'"); Hammer v. JP's Southwestern Foods, L.L.C., 739 F.Supp.2d 1155, 1157 (W.D. Mo. 2010) (citing 15 U.S.C. § 1681c(g)) ("[N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.")

4.  The purpose of this "truncation requirement" is to prevent identity theft. The Federal Trade Commission estimates that over 9 million persons each year have their identity assumed by criminals for financial gain, causing losses in excess of $50 billion.

5.  One common modus operandi of identity thieves is to obtain credit card receipts that are lost or discarded, or through theft, and use the information on them to engage in transactions. Identity thieves who do this are known as "carders" and "dumpster divers." This modus operandi is more common than the use of sophisticated electronic means to obtain the information. Robin Sidel, "Identity Theft – Unplugged Despite the High-Tech Threat, When You Get Ripped Off It's Usually Still the Old Way," Wall Street Journal, Oct. 5, 2006, p. B1.

6.  Merchants generally will not honor a credit card in a card-not-present transaction (telephone, internet or fax) without both the correct expiration date and the card number.

Thieves prefer to engage in such transactions to commit credit card fraud, so as to reduce the chances of apprehension.

7. To curb this means of identity theft, Congress prohibited merchants, such as Defendants, who accept credit cards and debit cards from issuing electronically-generated receipts that display either the expiration date or more than the last five digits of the card number.

8. Congress gave merchants who accept credit cards and/or debit cards up to three years to comply with its requirements, requiring full compliance with its provisions no later than December 4, 2006.

9. On June 3, 2008, Congress retroactively removed liability for willful expiration date violations through that date. This amendment was widely publicized and sponsored by the Chamber of Commerce and other retailer organizations.

10. Despite years of publication, notice and compliance by other merchants, Defendants have recklessly and willfully violated FACTA and failed to protect Plaintiff and others similarly situated against identity theft and credit card and debit card fraud by failing to comply with the truncation requirement.

11. Plaintiff brings this action against Defendants based on their willful and reckless violations of 15 U.S.C. §§ 1681 *et seq.* and seeks statutory damages, attorneys' fees, costs, and such other relief as the Court deems proper, including punitive damages.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p ("FCRA").

13. Venue is proper because Defendants conduct business within this jurisdiction and the transaction giving rise to this lawsuit occurred within this jurisdiction.

## PARTIES

14. Plaintiff, Alana Karpoff Schwartz, is a resident of New Jersey.

15. Defendant Intimacy Management Company, LLC is a Delaware limited liability company with an address at 3980 Dekalb Technology Pkwy. #760, Atlanta, GA 30340. It operates three stores within the Southern District of New York.

16. Defendant Intimacy in New York, LLC is a New York limited liability company with an address for service of process c/o Smith Gambrell & Russell, LLP, Joseph M. Pastore III, Esq., 250 Park Avenue, Suite 1900, New York, NY 10177.

17. Defendants are each a "person that accepts credit cards or debit cards for the transaction of business" within the meaning of FACTA.

18. Defendants Does 1-10 are individual officers, directors, employees and agents of defendants who authorized, directed or participated in the violations of law complained of.

## FACTS

19. FACTA was enacted in 2003 and gave merchants who accept credit cards and/or debit cards up to three years to comply with its requirements, requiring compliance for all machines no later than December 4, 2006.

20. 15 U.S.C. §1681c(g)(1), provides that:

> …no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the

expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

21. In transacting its business, Defendants use one or more cash registers and/or other machines or devices that electronically print receipts for credit card and debit card transactions.

22. Plaintiff has a bank issued credit and/or debit card as defined under 15 U.S.C. § 1681a.

23. On August 1, 2012, Plaintiff used her Discover credit card to make a purchase at Defendants' store located at 1051 Third Avenue, New York, New York.

24. At the completion of her purchase, Plaintiff was given a customer copy of a computer-generated cash register receipt that published the expiration date of Plaintiff's credit card. The customer copy of the receipt also published the last four digits of Plaintiff's credit card number.

25. The publication of expiration dates on customer receipts disseminated at the point of sale, in addition to the last four digits of the credit card or debit card number, exponentially increases the possibility of identity theft, which is the obvious reason that the credit card companies and Congress require the truncation of expiration dates. The expiration dates and credit card or debit card numbers are used to confirm that a person making a purchase over the phone or on the internet actually has the card in their possession.

26. An identity thief who steals a receipt containing the last four digits of a credit card or debit card number and an expiration date can use that data in an attempt to dupe the cardholder, or other potential information sources, into disclosing additional confidential financial information relating to the cardholder. The more information that is disclosed on the receipt, the easier it is to pilfer additional confidential financial information.

27. Here, there were <u>four</u> digits of Plaintiff's credit card number <u>and</u> the expiration date printed on the customer receipt. Defendants' willful, reckless and wanton violation is tantamount to turning over Plaintiff's physical credit to an identity thief. Multiply this violation by thousands, hundreds of thousands or millions of times and the Defendants have created a potential criminal bonanza for identity thieves.

28. With respect to point of sale machines that were first put into use after January 1, 2005, 15 U.S.C. § 1681c(g)(3)(B) required immediate compliance with the provisions of 15 U.S.C. § 1681c(g)(1).

29. With respect to point of sale machines that were in use before January 1, 2005, 15 U.S.C. § 1681c(g)(3)(B) required immediate compliance with the provisions of 15 U.S.C. § 1681c(g)(1) on or after December 1, 2006.

30. In May 2007, the Federal Trade Commission issued a business alert informing businesses that "you may include no more than the last five digits of the [credit and debit] card number, and you must delete the [credit and debit] card's expiration date." FTC Business Alert, Slip Showing? Federal Law Requires All Businesses to Truncate Credit Card Information in Receipts.

31. On June 3, 2008, President George W. Bush signed The Credit and Debit Card Receipt Clarification Act (Clarification Act), which amended the Fair and Accurate Credit Transactions Act (FACTA). The Clarification Act provides that "any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004, and the date of the enactment of this subsection but otherwise complied with the requirements of section 605(g) for such receipt shall not be in willful noncompliance with section 605(g) by reason of printing such expiration date on the receipt."

32. Defendants accept Visa, MasterCard, Discover credit and debit cards and American Express credit cards in the course of transacting business with persons who make purchases at Defendants' retail locations.

33. Banks and credit card associations (i.e. Visa, MasterCard, American Express, Discover, etc.) are keenly aware of the importance of truncating expiration dates as required under FACTA. Accordingly, they informed their merchants, such as Defendants, for years about FACTA and what a company must do to be compliant.

34. VISA, MasterCard, the PCI Security Standards Council (a consortium founded by VISA, MasterCard, Discover, American Express), companies that sell cash registers and other devices for the processing of credit or debit card payments, and other entities informed merchants, such as Defendants, about FACTA, including its specific requirements concerning the truncation of credit card and debit card numbers and prohibition on the printing of expiration dates, and the need to comply with the same.

35. Defendants, by the terms of the contracts they entered with Visa, MasterCard, American Express, and/or Discover, acknowledged their awareness of FACTA's truncation requirements and prohibition on printing expiration dates and expressly agreed to be FACTA compliant.

36. Visa explicitly instructed merchants, including Defendants, that a credit or debit card number must be truncated to no more than five digits and that the expiration date must be truncated entirely.

37. For example, the August 12, 2006 edition of "Rules for Visa Merchants" (p. 62), which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of

the receipt" and "the expiration date should not appear at all." These statements were accompanied by a picture of a receipt showing precisely what had to be removed. VISA required complete compliance by July 1, 2006, five months ahead of the statutory deadline. Defendant would have received this and subsequent Rules from Visa.

38. MasterCard explicitly instructed merchants, including Defendants, that a credit or debit card number must be truncated to no more than five digits and that the expiration date must be truncated entirely.

39. American Express explicitly instructed merchants, including Defendants, that a credit or debit card number must be truncated to no more than five digits and that the expiration date must be truncated entirely.

40. Discover explicitly instructed merchants, including Defendants, that a credit or debit card number must be truncated to no more than five digits and that the expiration date must be truncated entirely.

41. A bulletin dated June 14, 2006 issued by AllianceData, another processor, informed its customers that under FACTA "no person that accepts credit cards or debt cards for the transaction of business shall print more that the last 5 digits of the card number **or the expiration date** upon any receipt provided to the cardholder at the point of sale transaction." It further stated that Visa required compliance by July 1, 2006 and MasterCard by April 1, 2005.

42. Upon information and belief, Defendants are members of various trade groups that informed their members about the truncation requirements.

43. Governmental agencies have expended considerable resources to inform business, such as Defendants, about the importance of FACTA, why the law is in place and what business must do to be compliant or risk statutory penalties. For example, the Federal Trade Commission

issued a business alert in May 2007 entitled "Slip Showing? Federal Law Requires All Businesses to Truncate Credit Card Information on Receipts," which stated: "According to the federal Fair and Accurate Credit Transactions Act (FACTA), the electronically printed credit and debit card receipts you give your customers must shorten – or truncate – the account information. You may include no more than the last five digits of the card number, and you must delete the card's expiration date."

44. At the time of the FACTA violations identified in this Complaint and before, Defendants knew of their obligations under FACTA and the importance of the truncation requirements.

45. Most of Defendants' business peers and competitors readily brought their credit card and debit card receipt printing process into compliance with FACTA by programming their card machines and devices to comply with the truncation requirement.

46. FACTA compliance requires either dedication of internal resources or payment to third-party vendors to bring a company into compliance with FACTA.

47. Defendants could readily have done the same, but either recklessly failed to review and implement their own FACTA compliance or intentionally opted to save money and not bring their stores into compliance.

48. The cost of truncating credit card or debit card numbers and/or expiration dates is significant, but minimal when compared with the risk posed to thousands of consumers such as Defendants' customers.

49. Despite knowledge of FACTA's requirements, contractual requirements from credit card issuers that Defendants must be FACTA compliant, and notifications from credit card issuers and the federal government, Defendants continue to willfully disregard FACTA's

requirements and continue to use cash registers or other machines or devices that print receipts in violation of FACTA after June 3, 2008.

50. Defendants operate stores throughout the United States in at least 13 cities.

51. On information and belief, Defendants have willfully failed to comply with FACTA's truncations requirements at all their retail locations throughout the class period.

## VIOLATION ALLEGED

52. Defendant violated 15 U.S.C. § 1681c(g)(1), which provides that:

> ...**no person** that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number **or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.**

15 U.S.C. § 1681c(g)(1) (emphasis added).

53. The FCRA, 15 U.S.C. § 1681n, provides:

> § 1681n. Civil Liability for willful noncompliance
>
> (a) In general. Any person who willfully fails to comply with any requirement imposed under this title [15 USC §§ 1681 *et seq.*] with respect to any consumer is liable to that consumer in an amount equal to the sum of -
>
> (1) (A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; [ ]
>
> (2) such amount of punitive damages as the court may allow; and
>
> (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court...

54. The FCRA, 15 U.S.C. § 1681p, further provides:

> § 1681p. Jurisdiction of courts; limitation of actions
>
> An action to enforce any liability created under this title [15 U.S.C. §1681 *et seq.*] may be brought in any appropriate United States district court,

without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than the earlier of –

(1) 2 years after the date of discovery by plaintiff of the violation that is the basis for such liability; or

(2) 5 years after the date on which the violation that is the basis for such liability occurs.

55. Defendants knew of and ignored their legal duty to truncate the expiration date from debit card and credit card purchases that they accepted from Plaintiff and the class members at the point of sale or, alternatively, Defendants willfully failed to inquire at all about their duty to truncate as required by the statute.

56. Defendants received information on multiple occasions regarding the truncation requirements and its importance for prevention of identity theft.

57. Notwithstanding all of the publicity and the Defendants' knowledge of the statute's requirements, they willfully failed to comply with FACTA thereby putting all of their customers' financial identities at risk.

## CLASS ALLEGATIONS OF THE VIOLATION ALLEGED

58. Plaintiff brings this action on behalf of a class pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

59. The proposed class is defined as all persons who used either a Visa, MasterCard, or Discover debit or credit card, and/or American Express credit card at any of Defendants' locations where Defendants provided an electronically printed receipt at the point of sale or transaction that displayed the expiration date of that person's credit or debit card for a time period beginning June 4, 2008 until the date of the class is certified.

60. The class is so numerous that joinder of all individual members in one action would be impracticable.

61.     On information and belief, Defendants were providing improperly truncated receipts to their customers at all of their locations.

62.     There are well over 100 persons who used either a Visa, MasterCard, or Discover debit or credit card, and/or American Express credit card at Defendants' business locations where Defendants provided an electronically printed receipt at the point of sale or transaction that violated FACTA's truncation requirements for a time period beginning June 4, 2008 until the date of the filing of this lawsuit.

63.     Plaintiff's claims are typical of the claims of the class members. All are based on the same legal theories and arise from the same unlawful and willful conduct. There are common questions of fact and law affecting members of the class, which common questions predominate over questions which may affect individual members. These include the following:

   a.   Whether Defendants had a practice of providing customers with a sales or transaction receipt which failed to comply with the truncation requirement;

   b.   Whether Defendants thereby violated FACTA; and

   c.   Whether Defendants' conduct was willful.

64.     Plaintiff will fairly and adequately represent the class members.

65.     Plaintiff has no interests that conflict with the interests of the class members.

66.     Plaintiff has retained experienced counsel in consumer class action matters.

67.     A class action is superior to other available means for the fair and efficient adjudication of the claims of the class members. Individual actions are not economically feasible.

WHEREFORE, Plaintiff requests this Honorable Court to: 1) certify the class as described herein; and 2) enter judgment in favor of Plaintiff and the class members and against Defendants awarding:

a. Statutory damages of no less than $100 nor more than $1,000 per violation;

b. Pre- and post-judgment interest, attorneys' fees and costs;

c. Punitive damages, in an amount to be proven at trial; and

d. Such other and further relief as the Court may deem proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury on all issues so triable.

DATED this 30th day of October 2013.

Respectfully submitted,

By: _____
Howard L Wexler (3769)
Herzfeld & Rubin, PC
125 Broad Street
New York, NY 10004
(212) 471-8500
(212) 344-3333
hwexler@herzfeld-rubin.com


Shimshon Wexler
The Law Offices of Shimshon Wexler, PC
PO Box 250870
New York, New York 10025
(212) 760-2400
(917) 512-6132 (FAX)
shimshonwexler@yahoo.com

## AFFIDAVIT OF SERVICE BY E-MAIL TRANSMISSION AND OVERNIGHT MAIL

STATE OF NEW YORK  )
                   :ss.:
COUNTY OF NEW YORK)

Emilia Bermudez, being duly sworn, deposes and says:

Deponent is not a party to the action, is over (18) years of age and resides in Bronx County, New York;

that on October 30, 2013, deponent served the within:

### FIRST AMENDED COMPLAINT – CLASS ACTION

Upon the following attorneys shown below by:

1. E-MAIL transmission to the e-mail addresses shown below, the same being the e-mail addresses designated by said attorneys for that purpose, by e-mailing a true copy of same to:

   Joseph M. Pastore III, Esq. (1717)
   PASTORE & DAILY, LLP
   Attorneys For Defendants
   4 High Ridge Park, 3rd Floor
   Stamford, CT 06905
   (203) 658-8454  Telephone
   (203) 348-0852  Facsimile
   JPastore@psdlaw.net

2. upon the party shown above at the address shown above, by delivering the same in a properly addressed wrapper into the custody of UPS, an overnight delivery service regularly accepting items for overnight delivery to any address in the state, prior to the latest time designated by UPS for overnight delivery, to be delivered on Thursday, October 31, 2013 to said attorney at said address.

_____
Emilia Bermudez

Sworn to before me this
30th day of October, 2013

_____
Notary Public
Kathleen Gyan
Notary Public State of New York
No. 01GY6291301
Qualified in Kings County
Commission expires 10/15/2017

**UPS CampusShip: View/Print Label**

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed sheet containing the label at the line so that the entire shipping label is visible. Place the label on a single side of the package and cover it completely with clear plastic shipping tape. Do not cover any seams or closures on the package with the label.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **UPS locations include the UPS Store®, UPS drop boxes, UPS customer centers, authorized retail outlets and UPS drivers.**
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.
   Take your package to any location of The UPS Store®, UPS Drop Box, UPS Customer Center, UPS Alliances (Office Depot® or Staples®) or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.

   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

FOLD HERE

