**EXHIBIT G**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
ALANA KARPOFF SCHWARTZ, Individually and on behalf of a class,

                        Plaintiff,

    - against -

INTIMACY IN NEW YORK, LLC; INTIMACY MANAGEMENT COMPANY, LLC,

                        Defendants.
----------------------------------------------------------------------X

13-civ-5735 (PGG)

AFFIDAVIT OF JUAN GONZALEZ III

STATE OF CALIFORNIA    )
                              )  s.s.
COUNTY OF SAN FRANCISCO )

       JUAN GONZALEZ III, being duly sworn, deposes and says:

1.    I am employed by KPMG LLP ("KPMG"), and have been so employed for over 20 years. My title is Principal and I have held this title for over 15 years.

2.    KPMG has been retained to assist Defendants in this matter to respond to Plaintiff's Discovery Demands, as well as to analyze the efforts necessary to respond to such Discovery Demands.

3.    I submit this affidavit in support of Defendants' motion to bifurcate "merits discovery" from "class discovery" in this action which is brought on behalf of a putative class.

4.    I hold a Ph.D. in economics from the Massachusetts Institute of Technology, with a major in industrial organization and a minor in econometrics. In addition, I am a *summa cum laude* graduate of the University of Texas at Austin with a major in economics and a minor in mathematics. I taught at the University of California, Berkeley between 1993 and 1998 and have

served as a guest speaker at the U.C. Berkeley Law School and Business School, as well as the University of San Francisco. As a KPMG professional, I have helped numerous clients design statistical samples in the context of quality control, audit testing, compliance reviews, government investigations, and litigation. I have specific sampling experience in the context of e-discovery. For example, I developed a proposed sample to address claims of potentially burdensome production in the context of a government investigation. I have also prepared sample designs for testing (1) risks associated with disposition of "old documents" and (2) risks associated with inadvertent privilege waiver. I have offered expert testimony in the area of statistical analysis, and have met and conferred with opposing statisticians to develop mutually agreeable approaches. More generally, I have collaborated with statistical experts from other firms, U.S. Government agencies, and academic institutions. See Attachment A for a copy of my bio.

5.  It is my understanding that Plaintiff alleges that Defendants violated the Fair and Accurate Credit Transactions Act ("FACTA"), and specifically 15 U.S.C. § 1681c(g), by issuing to Plaintiff a credit card receipt on August 1, 2013 that contained the card's expiration date.

6.  I have reviewed Plaintiff's Initial Request For Production. Plaintiff requests copies of all merchant copies of electronically printed receipts dating back to June 3, 2008. (Request No. 7). I understand that this request would require production of electronic receipts issued in 6 stores in 2008, 9 stores in 2009, 13 stores in 2010, 17 stores in 2011, 18 stores in 2012 and 18 stores in 2013. I have been provided with information from Intimacy that there was an approximate total of 977,000 customer transactions at these stores from 2008 through 2013. Accordingly, in order to determine which of these customers may be class members, it is necessary to review all of these receipts.

7. Plaintiff's Request No.'s 25 and 26 additionally seek documents concerning the "identity" and "addresses" of all persons issued electronically printed receipts at the subject stores after June 3, 2008.

8. On January 21, 22, and 23 of this year, two KPMG professionals visited the main office of Intimacy in Atlanta, Georgia to: (1) determine what printed receipts are maintained in Atlanta; (2) determine how the printed receipts are maintained in Atlanta; (3) determine where the printed receipts are maintained; and (4) conduct a sample review of selected printed receipts for the purposes of determining how long it might take to conduct a complete review of all of the printed receipts maintained by Intimacy. I was involved with planning these visits; determining the procedure for the review; and determining the size and distribution of the sample. I had daily conversations with my KPMG team about the maintenance of the printed receipts and the review that was conducted by KPMG. The opinions I express in this Affidavit are based, in part, on the facts reported to me by my KPMG team.

9. I understand that the printed receipts from the stores are maintained by Intimacy at each store location and/or at its main office in Atlanta, Georgia (the "Atlanta Office"). The Atlanta Office currently maintains printed receipts in boxes from various time periods for 11 of the 18 stores that were in operation from 2008 – 2013 (the "Relevant Time Period"). The printed receipts for the other stores are maintained in the store locations. The boxes in Atlanta are kept in a storage area and are not organized in any particular manner. Many of the boxes contain other documents in addition to a store's printed receipts, such as the store's vouchers and reconciliations. See Attachment B for photos of the storage area in the Atlanta Office.

10. I understand that the printed receipts in the boxes are kept in sealed envelopes according to the date of the transaction; *i.e.*, each sealed envelope contains that day's printed receipts.

3

These sealed envelopes of printed receipts are generally grouped by month, and each box typically contains only a few months. See Attachment C for photos of the envelopes of printed receipts in the Atlanta Office.

11.     It is important to note that printed receipts for credit card transactions are comingled with printed receipts for cash transactions, store credit transactions, returns, and exchanges. Therefore, every printed receipt must be examined in order to determine if it is a receipt for a credit card transaction. Additionally, some of the stores stapled groups of receipts together for a particular day. See Attachment D for photos of the envelopes of printed receipts in the Atlanta Office.

12.     Based on KPMG's review of selected receipts (as described below), the printed receipts identify, among other things, (1) the store name and address; (2) a unique "Receipt ID" number; (3) whether the transaction was by credit card, cash, check, or store credit; (4) and, for most transactions, the customer's name and address.

13.     KPMG was asked to approximate how long it would take to review *all* of the printed receipts for all of its stores in operation during the Relevant Time Period maintained by Intimacy at any location in order to determine which of its customers might be in the putative class.

14.     To do cost effectively prepare this estimate, KPMG conducted a sample review of the printed receipts maintained in the Atlanta Office. To determine the size of the sample, I assumed that recording relevant information from a receipt would take approximately 45 seconds (0.75 minutes). I assumed a standard deviation of 15 seconds (0.25 minutes). Using the U.S. Government's RAT-STATS sampling tool under the menu for unrestricted variable sample size determination, I determined that a sample of 42 receipts per store would yield a mean time estimate with a 95% confidence level at 10% precision. These are values more conservative

4

(*i.e.*, more demanding) than the 80/20 standard commonly used in audit sampling by the U.S. Health and Human Service. By selecting 50 receipts per store, we increased the probability of attaining the forecasted 95/10. We collected 50 receipts for each of the eleven stores whose receipts were available in Atlanta. Thus, the total number of printed receipts sampled was 550.

14. Before conducting the sample, KPMG first had to locate the boxes of printed receipt for the stores maintained in the Atlanta Office. This took 45 minutes. KPMG then identified the date ranges of the receipts per store, which took another 45 minutes. Next, KPMG pulled the sealed envelopes of printed receipts from each store spread over the Relevant Time Period (to the extent available from particular stores). This took a 1 hour. In total, it took KPMG 2 ½ hours to prepare to conduct the sample review.

15. KPMG then conducted the review of each store by (1) opening the sealed envelopes containing the daily printed receipts; (2) removing 50 receipts per store spread across the Relevant Time Period; (3) examining each receipt and recording (i) the date, (ii) the Receipt ID number, (iii) the kind of transaction; *e.g.*, credit card, check, or cash/other, and (iv) whether the customer's name and address were on the receipt. If the receipt was for a credit card transaction, KPMG further recorded whether the last 4 digits of the credit card and the expiration date of the credit card were displayed on the receipt. See Attachment C for an example of a review log. KPMG recorded the start time and end time for the review of each store's printed receipts.

16. The average time it took for KPMG to review 50 printed receipts from a store and to record the information outlined above was 30 minutes, or approximately 1.6 receipts per minute. KPMG estimates that it would take approximately 25 seconds to copy each printed receipt that was found to be associated with a customer who would be in the putative class, particularly given that the receipts are fragile and are often stapled together. The total copying time for 50

receipts (assuming all are associated with potential class members) is approximately 20 minutes. Thus, the total estimated time to review each receipt, record the necessary information, and copy the receipts is 50 minutes per 50 receipts, or 1 minute per receipt.

17. By extrapolating 1 minute per receipt over the total number of customer transactions during the Relevant Time Period, it would take approximately 977,000 minutes, or 16,283 hours to review the printed receipts in order to determine which customers would be in the putative class. 16,283 hours would take 10 individuals 1,628.3 hours each to complete the review. This equates to nearly 1 year of continuous work hours for 9 individuals to complete.

18. In my experience, the average rate for hiring non-lawyer individuals with the appropriate level of experience to review these kinds of documents for litigation is $50 per hour. This rate would equate to a cost of $814,150 ($50/hour x 16,283 hours) to conduct a review of the printed receipts in order to determine which Intimacy customers would be in the putative class. This estimate does not include time to manage multiple resources, conduct a quality control review, or other necessary expenses such as copying costs (not fees for copying time), production, and facility costs.

_____
JUAN GONZALEZ III

Sworn to before me
this 28 day of January, 2014

_____
NOTARY PUBLIC

BRENTS
Commission # 2022493
Notary Public - California
San Francisco County
My Comm. Expires Apr 28, 2017

**CALIFORNIA JURAT WITH AFFIANT STATEMENT**
**GOVERNMENT CODE § 8202**

[X] See Attached Document (Notary to cross out lines 1–6 below)
[ ] See Statement Below (Lines 1–6 to be completed only by document signer[s], *not* Notary)

_____   _____
*Signature of Document Signer No. 1*   *Signature of Document Signer No. 2 (if any)*

State of California

County of San Francisco

Subscribed and sworn to (or affirmed) before me on this 28 day of January, 2014, by

(1) Juan Gonzalez III

(2) _____
*Name(s) of Signer(s)*

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature _____
*Signature of Notary Public*

LAURI D. BRENTS
Commission # 2022493
Notary Public - California
San Francisco County
My Comm. Expires Apr 29, 2017

*Place Notary Seal Above*

———————————— OPTIONAL ————————————

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Further Description of Any Attached Document**

Title or Type of Document: Affidavit

Document Date: January 28 2014     Number of Pages: 6

Signer(s) Other Than Named Above: _____

© 2013 National Notary Association • NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5910