**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
ALANA KARPOFF SCHWARTZ, Individually       :
and on behalf of a class,                  :
                                           :
                Plaintiff,                 :        13-cv-5735 (PGG)
                                           :
        v.                                 :
INTIMACY IN NEW YORK, LLC; INTIMACY,       :
MANAGEMENT COMPANY, LLC,                    :
                                           :
                Defendants.                :
-------------------------------------------------------------x
```

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION
FOR (1) CONDITIONAL CLASS CERTIFICATION; (2) APPOINTMENT OF CLASS
REPRESENTATIVE; (3) APPOINTMENT OF CLASS COUNSEL; (4) PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT AND NOTICE TO CLASS; AND (5)
SETTING OF FINAL APPROVAL HEARING**

Respectfully Submitted,

SPENCER FANE BRITT & BROWNE LLP
Joshua C. Dickinson (admitted *pro hac vice*)
Bryant T. Lamer (admitted *pro hac vice*)
1000 Walnut Street, Suite 1400
Kansas City, MO 64105
816-474-8100
jdickinson@spencerfane.com
blamer@spencerfane.com

HERZFELD & RUBIN, P.C.
Howard L. Wexler
125 Broad Street
New York, NY 10004
212-471-8500
hwexler@herzfeld-rubin.com

THE LAW OFFICES OF SHIMSHON WEXLER, P.C.
Shimshon Wexler
216 W. 104th Street, # 129
New York, NY  10025
212-760-2400
shimshonwexler@yahoo.com

*Attorneys for Plaintiff Alana Karpoff Schwartz*

## TABLE OF CONTENTS

Page(s)

I.    THE STANDARD FOR CLASS CERTIFICATION IS MET...........................................5

    A.    The Requirements of Rule 23(a) Are Satisfied.....................................................6

        1.    The Class is Numerous ..............................................................................6

        2.    The Commonality Requirement is Satisfied. ............................................7

        3.    Plaintiff's claims are "typical."................................................................8

        4.    Plaintiff Will Fairly and Adequately Protect the Interests of the Class....................................................................................................8

    B.    The Requirements of Rule 23(b)(3) Are Satisfied................................................9

        1.    Common Questions of Law and Fact Predominate. ...................................9

        2.    A Class Action is Superior to Other Means of Adjudication....................11

II.   THE CLASS NOTICE PLAN IS APPROPRIATE...................................................12

III.  CLASS COUNSEL SHOULD BE APPOINTED. .............................................14

IV.   PRELIMINARY APPROVAL OF SETTLEMENT IS APPROPRIATE........................15

        1.    The complexity, expense, and likely duration of the litigation; the risks of maintaining the class action through trial; and the ability of the defendants to withstand a greater judgment.........................17

        2.    The stage of the proceedings and the amount of discovery completed. ...............................................................................................19

        3.    The reaction of the class to the settlement. .............................................20

        4.    The risks of establishing liability; the range of reasonableness of the settlement fund in light of the best possible recovery; and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. .............................22

V.    ESTABLISHMENT OF A FINAL APPROVAL HEARING.........................................24

VI.   CONCLUSION..............................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Agent Orange Prod. Liab. Litig. MDL No. 381*,
  818 F.2d 145 (2d Cir. 1987)......................................................................................12

*Aliano v. Joe Caputo and Sons—Alogonquin, Inc.*,
  No. 9-C-910, 2011 WL 1706061 (N.D. Ill. May 5, 2011)......................................23

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (2007)................................................................................................12

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp*,
  222 F.3d 52 (2d Cir. 2000).......................................................................................8

*Bakalar v. Vavra*,
  237 F.R.D. 59 (S.D.N.Y.2006) .................................................................................6

*Beringer v. Standard Parking Corp.*,
  Nos. 07 C 5027, 07 C 5119, 2008 WL 4390626 (N.D. Ill. Sept. 24, 2008) ...........24

*Boyd v. Interstate Brands Corp.*,
  256 F.R.D. 340 (E.D.N.Y. 2009) ..............................................................................6

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974).....................................................................................17

*Clark v. Ecolab, Inc.*,
  2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) .........................................................16

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir.1995)..........................................................................................7

*Cowley v. Burger King Corp.*,
  No. 07–21772, 2008 WL 8910653 (S.D. Fla. May 23, 2008) .................................23

*Diaz v. Residential Credit Solutions*,
  No. 12-CV-3781 (ADS)(ETB), 2014 WL 279473 (E.D.N.Y. January 23, 2014)
  ...................................................................................................................................11

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) ........16

*Gardner v. Appleton Baseball Club, Inc.*,
  No. 09–C–705, 2010 WL 1368663 (E.D.Wis. 2010) ..............................................23

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000).............................................................................17

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
   142 F.R.D. 588 (S.D.N.Y.1992) ...................................................................25

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ......................................................................15

*In re Initial Pub. Offering Sec. Litig.*,
   243 F.R.D. 79 (S.D.N.Y. 2007) .............................................................5, 7, 10

*Kalish v. Karp & Kalamotousakis, LLP*,
   246 F.R.D. 461 (S.D.N.Y. 2007) .................................................................11

*Kelen v. World Fin. Network Nat'l Bank*,
   295 F.R.D. 87 (S.D.N.Y 2013) .....................................................................11

*Long v. Tommy Hilfiger U.S.A., Inc.*,
   671 F.3d 371 (3d Cir. 2012)..........................................................................22

*Marisol A. v. Giuliani*,
   929 F. Supp. 662 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 372 (2d Cir. 1997) ...................................8

*Maywalt v. Parker & Parsley Petroleum Co.*,
   67 F.3d 1072 (2d Cir. 1995)..........................................................................15

*In re Merrill Lynch Tyco Research Sec. Litig.*,
   249 F.R.D. 124 (S.D.N.Y.2008) ..................................................................12

*Noble v. 93 Univ. Place Corp.*,
   224 F.R.D. 330 (S.D.N.Y. 2004) .................................................................14

*Rosenthal v. Longchamp Coral Gables LLC*,
   603 F.Supp.2d 1359 (S.D. Fla. 2009) .........................................................23

*State of W. Va. V. Chas. Pfizer & Co.*,
   440 F.2d 1079 (2d Cir. 1971)........................................................................12

*Stinson v. N.Y.C*,
   282 F.R.D. 360 (S.D.N.Y. 2012) .................................................................10

*Sukhnandan v. Royal Health Care of Long Island LLC*,
   2013 WL 4734818 (S.D.N.Y. Sept. 3, 2013)...............................................16

*Tiro v. Pub. House Invs., LLC*,
   2013 WL 2254551 (S.D.N.Y. May 22, 2013) ..............................................16

*Torres v. Gristede's Operating Corp.*,
No. 04–CV–3316 (PAC), 08–CV–8531 (PAC), 08–CV–9627 (PAC), 2010 WL
2572937 (S.D.N.Y. Jun.1, 2010) .......................................................................5

*In re Traffic Executive Ass'n*,
627 F.2d 631 (2d Cir. 1980)............................................................................16

*Van Straaten v. Shell Oil Products Co. LLC*,
678 F.3d 486 (7th Cir. 2012) ..........................................................................22

*Vengurlekar v. Silverline Techs., Ltd.*,
220 F.R.D. 222 (S.D.N.Y.2003) .......................................................................7

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005)................................................................4, 12, 15, 16

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982)................................................................................4

*Yuzary v. HSBC Bank USA, N.A.*,
No. 12 Civ. 3693(PGG), 2013 WL 1832181 (S.D.N.Y. Apr. 30, 2013) .........15, 17

**Statutes**

15 U.S.C.A. § 1681 ...........................................................................................22

15 U.S.C. § 1681c(g) ..........................................................................................2

15 U.S.C. § 1681n.......................................................................................2, 22, 24

FACTA ................................................................................................... *passim*

Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* .......................................1

Fair and Accurate Credit Transactions Act........................................................1

**Other Authorities**

Fed. R. Civ. P. 23(a)(1) ......................................................................................6

Fed. R. Civ. P. 23(a)(4)......................................................................................8, 9

Fed. R. Civ. P. 23(a) and 23(b)(3) ......................................................................5

Fed. R. Civ. P. 23(e)(2).....................................................................................4, 24

Fed. R. Civ. P. 23(g) ........................................................................................14

Federal Rule of Civil Procedure 23(c)(2) ..........................................................12

iv

Herbert B. Newberg & Alba Conte, <u>Newberg on Class Actions</u>, § 11.25 (4th ed. 2002) ..............................................................................................................5

http://www.jamsadr.com/hughes/ ...............................................................................3, 19

http://www.usatoday.com/story/tech/2014/09/24/data-breach-companies-60/1610 6197/ .....................................................................................................................1

Newberg, *Class Actions* § 11.41 ....................................................................................25

Rule 23 .......................................................................................................................6, 14

Rule 23(a) ............................................................................................................5, 6, 7, 10

Rule 23(a)'s ....................................................................................................................9

Rule 23(b) ....................................................................................................................5, 9

Rule 23(b)(3) ................................................................................................................9, 11

Rules 23(a) and (b) ...........................................................................................................5

<u>www.bjs.gov/content/pub/pdf/vit12.pdf</u> ......................................................................1

Alana Karpoff Schwartz ("Plaintiff"), pursuant to Rule 23 of the Federal Rules of Civil Procedure, hereby respectfully submits this Memorandum of Law in Support of its Unopposed Motion for conditional certification of the Settlement Class, appointment of Plaintiff as Class Representative and Plaintiff's Counsel as Class Counsel, preliminarily approval of the proposed Settlement, approval of notice to the Class, and setting a Final Approval Hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2003, the Fair and Accurate Credit Transactions Act ("FACTA") was signed into law. The purpose of FACTA, an amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), is to protect consumers from the devastating effects of identity theft and credit card fraud.  The U.S. Department of Justice estimates that over 16 million people each year have their identity assumed by criminals for financial gain, causing annual losses of nearly $25 billion.  *See* www.bjs.gov/content/pub/pdf/vit12.pdf.

Data security, credit card theft, and identity theft are not new, but they are a burgeoning problem.  As recent data breaches at companies such as Target, Sony, Home Depot, Anthem and JP Morgan Chase have demonstrated, consumers' data security is increasingly under attack.  A recent report suggested that 43% of all companies have experienced some form of data breach. http://www.usatoday.com/story/tech/2014/09/24/data-breach-companies-60/16106197/. Congress sought to address this troubling issue over a decade ago by passing FACTA and attempting to clog at least one method of identity theft – stolen information from a credit card sales receipt. To thwart this pervasive technique and its devastating effects, FACTA provides that:

> [N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

1

15 U.S.C. § 1681c(g).  Each of these "truncation" requirements provides a crucial barrier between an individual's financial identity and a would-be identity thief's predatory efforts to steal private consumer information.  Accordingly, to incentivize compliance with this important provision, the statute subjects willful violators of the Act to damage awards in an amount between $100 and $1,000 per violation.  15 U.S.C. § 1681n.

On August 1, 2013, Plaintiff made a purchase totaling $512.96 at an Intimacy retail store located at 1051 Third Avenue in New York, New York using her Discover card, and was provided with an electronically printed receipt.  That receipt displayed the card's expiration date.

On August 15, 2013, Plaintiff filed her Class Action Complaint against Defendants Intimacy In New York, LLC and Intimacy Management Company, LLC ("Intimacy" or "Defendants"), which owns and operates Intimacy retail locations in the United States.  *See* Doc. No. 1. In the Complaint, Plaintiff alleged that Intimacy willfully violated FACTA by failing to properly truncate the display of credit card numbers and expiration dates on electronically printed receipts provided to their customers.  She seeks statutory damages, punitive damages and attorneys' fees on her behalf, and for the members of the proposed Class.  Defendants filed a motion to dismiss the Complaint on October 3, 2013. *See* Doc. No. 9. Plaintiff filed her amended complaint on October 30, 2013.  *See* Doc. No. 19.  Defendants then withdrew their motion to dismiss, which the Court ordered withdrawn on November 5, 2013.  [Doc. 21]

On December 13, 2013, Intimacy filed an answer to the amended complaint, and on December 19, 2013, Intimacy filed an amended answer to the amended complaint.  *See* Doc. Nos. 38 and 39.  Class Counsel issued discovery requests including interrogatories, requests for production and requests for admission to Defendants.  Defendants also issued discovery to Plaintiff, which was answered by Plaintiff and Class Counsel.  Before answering their discovery

2

requests, Defendants sought to bifurcate the case wherein "merits" discovery would be pursued first and "class" discovery would come only after a determination of whether merits discovery established willfulness.  Following the first phase of "merits" discovery, Defendants intended to file a motion for summary judgment.  [Doc. 47]  Plaintiff opposed this motion. [Doc. 48]  While this motion was pending, the Defendants subsequently answered the discovery requests and the parties worked together on identifying measures to review nearly 1 million receipts at issue and address electronic discovery matters.  Because of the potential for protracted discovery disputes regarding the production and review of these documents, the pending motions that could bifurcate the case, and the remaining discovery (production of e-discovery and significant depositions) associated with defending and prosecuting the case, the parties agreed to conduct a mediation.

On May 30, 2014, the Parties mediated the dispute at JAMS before the Honorable Judge John J. Hughes, Esq. who served as a United States Magistrate Judge for the District of New Jersey between 1991 and 2009.  See http://www.jamsadr.com/hughes/. In connection with the mediation, the Parties shared pre-mediation discovery that would assist with analysis of any settlement.  For example, Intimacy provided information regarding the number of individuals in the proposed Class, the number of credit card transactions during the Class Period, the number of stores impacted by the disclosure of the credit card information, the reason for the disclosure, the length of the time the disclosure occurred, the method by which disclosure occurred, and the availability of insurance coverage.  Further, through the mediator, the parties engaged in discussions concerning the strength of the claims and defenses, as well as significant discussions concerning the applicability of case law and the potential impact it could have on each party's position.

As a result of discovery and arms-length negotiations during mediation and thereafter, the parties reached a settlement that will provide class members with a $50 gift card that can be used at

3

any retail location owned and operated by Intimacy in the United States. For the vast majority of class members to receive this benefit they do not need to do anything.  Once they receive notice, if they do not opt-out under the terms of the settlement agreement, the class member will receive a $50 gift card in the mail that can be used immediately at any Intimacy location.  See Settlement Agreement, Exhibit 1 at Page 10.  By the success achieved in this lawsuit, including the injunctive relief and monetary relief, Plaintiff and her counsel have ensured that Defendants will protect their customers from the type of data theft risk meant to be stamped out by FACTA.  As such, ensuring compliance with this longstanding federal statute provided a benefit to Defendants' customers by reducing the risk that they will be the subject to identity fraud in the future.

Plaintiff now seeks the Court's preliminary approval of a class action Agreement of Settlement (the "Settlement"), which is attached as Exhibit 1, resolving all claims against Intimacy in this action and subject to final Court approval.

## ARGUMENT AND AUTHORITIES

The settlement approval procedure provided for by the Settlement Agreement has three distinct steps:

1.      Submission of the Settlement to the Court for preliminary approval;
2.      Providing notice to the Settlement Class; and
3.      A final approval hearing.

The Court must review a proposed class action settlement to determine whether it is "fair, reasonable, and adequate."  FED. R. CIV. P. 23(e)(2). The fairness of a settlement is determined by looking at both the negotiating process by which it was achieved and the settlement's terms—that is, procedural and substantive fairness.  *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). Courts evaluate class action settlements with the general policy favoring the settlement of litigation in mind. *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).

4

With this Motion, Plaintiff requests that the Court take the first step in the settlement approval process and preliminarily approve the Settlement.  "To grant preliminary approval, the court need only find that there is probable cause to submit the settlement to class members and hold a full-scale hearing as to its fairness." *Torres v. Gristede's Operating Corp.,* No. 04–CV–3316 (PAC), 08–CV–8531 (PAC), 08–CV–9627 (PAC), 2010 WL 2572937, at *2 (S.D.N.Y. Jun.1, 2010) (citing *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980)) (internal quotes omitted).  "If, after a preliminary evaluation of the proposed settlement, the court finds that it 'appears to fall within the range of possible approval,' the court should order that the class members receive notice of the settlement." *Torres,* 2010 WL 2572937, at *2; Herbert B. Newberg & Alba Conte, <u>Newberg on Class Actions</u>, § 11.25 (4th ed. 2002).

Plaintiff, for the reasons set forth below, requests that the Court certify the Settlement Class for purposes of obtaining approval of the Settlement and providing notice, and appoint Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel.  Plaintiff further requests that this Court set this case for a final approval hearing.  For the purpose of settlement only, Defendants do not oppose Plaintiff's Motion.

## I.      THE STANDARD FOR CLASS CERTIFICATION IS MET.

Plaintiff respectfully asks this Court to grant class certification under FED. R. CIV. P. 23(a) and 23(b)(3) on behalf of the following class:

> All persons who between January 1, 2012 and *[INSERT DATE CLASS IS CERTIFIED*], made a purchase with a credit card at an Intimacy retail location and were provided an electronically printed receipt at the point of sale or transaction that displayed the expiration date of that person's credit card.

See Exhibit 1 at Page 4. To be certified, a putative class must meet all of the requirements of Rule 23(a) and must satisfy one of the three subsections of Rule 23(b). *See In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 84 (S.D.N.Y. 2007).  In addition to the analysis under Rules

23(a) and (b), a court must determine whether the plaintiffs have shown, pursuant to the "implicit requirements" of Rule 23, that the class is ascertainable and that the representative plaintiffs are members of that class. *Bakalar v. Vavra*, 237 F.R.D. 59, 64 (S.D.N.Y.2006). This Court should certify the Class because all implicit and explicit requirements of Rule 23 are satisfied in this case. *See* FED. R. CIV. P. 23.

### A.      The Requirements of Rule 23(a) Are Satisfied.

Pursuant to Rule 23(a):

> One or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class.

FED. R. CIV. P. 23(a). Each of these requirements is satisfied.

### 1.      The Class is Numerous

The class must be so numerous that joinder of all members is impracticable. FED. R. CIV. P. 23(a)(1). But impracticable does not mean impossible. *See Boyd v. Interstate Brands Corp.*, 256 F.R.D. 340, 357 (E.D.N.Y. 2009). When it assesses the practicality of joinder, "the court should take several factors into account, including 'judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members.'" *Id.* at 357 (quoting *Robidoux v. Celani*, 987 F.2d 931, 935-36 (2d Cir. 1993)). But if the putative class contains forty or more members then numerosity is presumed. *Id.*

In this case, numerosity of the Class is established because between January 1, 2012 to the date the class is certified for settlement purposes (the "Class Period"), Defendants provided

6

approximately 79,137 credit card receipts that contained the expiration date and therefore did not comply with FACTA's requirements.  See Exhibit 1 at Page 5. Thus, the number of class members is far beyond the number deemed sufficient in other cases. *See Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995) (numerosity presumed with forty or more class members).  It would not be practicable to join all the Class Members in this litigation.  Further, tens of thousands of separate trials would be wasteful when each case turns on the same evidence – a nonconforming receipt and Defendants' culpability in providing it.  Accordingly, the numerosity requirement of Rule 23(a) is met.

**2.      The Commonality Requirement is Satisfied.**

If common issues of fact or law affect all class members then the class satisfies the commonality requirement. *See In re IPO Sec. Litig.*, 243 F.R.D. at 84. The critical inquiry is whether the common questions are at the core of the cause of action alleged." *Vengurlekar v. Silverline Techs., Ltd.,* 220 F.R.D. 222, 227 (S.D.N.Y.2003). Defendants provided virtually identical receipts following the transaction. Each class member therefore suffered the same injury—being provided with an electronically receipt that displays the expiration date of the card in violation of federal law. Thus, there are no individual issues that will require examination to determine liability. A single common question is sufficient to satisfy the commonality requirement.

In this case, Plaintiff and the Class share nearly identical questions of law and fact, including: 1) whether Defendants had a practice during the Class Period of providing printed sales receipts displaying the expiration date of the credit card; 2) whether Defendants provided such receipts to Plaintiff and the members of the Class; 3) whether Defendants' conduct violated FACTA; 4) whether Defendants' conduct was willful; 5) whether Plaintiff and members of the

7

Class are entitled to statutory damages, costs, and/or attorneys' fees for Defendants' conduct; and 6) whether any defenses apply.  Accordingly, the commonality requirement is satisfied.

### 3.    Plaintiff's claims are "typical."

"A named plaintiff's claims are typical where each class member's claims arise from the same course of events and each class member makes similar legal arguments to prove defendant's liability. The rule is satisfied . . . if the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *Marisol A. v. Giuliani*,  929 F. Supp. 662, 691 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 372 (2d Cir. 1997)).

Here, Plaintiff made a purchase at one of Defendants' stores during the Class Period using her credit card and was provided a receipt that displayed the expiration date of her card. Plaintiff's claims against Defendants in this matter are identical to those of the Class.  Plaintiff alleges that Defendants violated FACTA by providing her, and each member of the proposed Class, with a transaction receipt containing the expiration date of the credit card during the Class Period. Further, Plaintiff seeks exactly the same statutory damages that each member of the Class would likewise seek.  Each class member's basis for recovery and Defendants' potential defenses are premised on the same legal theories and conduct.  Accordingly, Plaintiff's claims are typical of every Class member.

### 4.    Plaintiff Will Fairly and Adequately Protect the Interests of the Class.

A putative class representative must "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4).  "Representation is adequate if: (1) there is no conflict of interest between the plaintiffs and the other class members; and (2) plaintiffs' attorneys are qualified, experienced and capable." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp*, 222 F.3d 52, 60 (2d Cir. 2000).

KS 998107.1

Plaintiff satisfies both prongs of this requirement.  As discussed above, Plaintiff's claims are identical with other members of the Class.  Because Plaintiff's claims are identical to the Class, and she has no other interest in the case, there is no potential for conflicting interests in this case. Additionally, Plaintiff has and will capably fulfill the duties required of a Class Representative. Plaintiff made herself available throughout the entire litigation, including responding to discovery and being available during the mediation.  Moreover, Plaintiff retained qualified and experienced attorneys who are competent in class action litigation, and FACTA class action litigation in particular.  The qualifications of counsel are set forth in Section III below and demonstrate their applicable experience.  Accordingly, because Plaintiff and her counsel will adequately and effectively represent and promote the interests of the Class, the requirements of Rule 23(a)(4) are satisfied.  For these reasons, Plaintiff Alana Karpoff Schwartz asks the Court to appoint her as a representative of the Settlement Class.

**B.      The Requirements of Rule 23(b)(3) Are Satisfied.**

In addition to Rule 23(a)'s class certification requirements, a proposed class must satisfy one of the three alternative requirements of Rule 23(b).   FED. R. CIV. P. 23(b).  Plaintiff seeks certification pursuant to Rule 23(b)(3), which authorizes certification when:

> [T]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

FED. R. CIV. P. 23(b)(3).  Both conditions of Rule 23(b)(3) are satisfied in this case.

**1.      Common Questions of Law and Fact Predominate.**

"In order to meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof."

9

KS 998107.1

*See In re IPO Sec. Litig.*, 243 F.R.D. at 86. "'The 23(b)(3) predominance requirement is 'more stringent' and 'far more demanding than' the commonality requirement of Rule 23(a)." *Id.* (quoting *Maneely v. City of Newburgh*, 208 F.R.D. 69, 76 (S.D.N.Y. 2002)). "Nonetheless, the Supreme Court has noted that the predominance requirement is 'readily met in certain cases alleging consumer or securities fraud. . .'" *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (2007)).

The predominance requirement can be satisfied by alleging that Defendants engaged in a systematized unlawful practice that gives rise to common questions of law and fact. For example, the predominance requirement was met when a class of individuals alleged that the New York Police Department ("NYPD") infringed their constitutional rights by maintaining a policy which required officers to issue summonses without probable cause in order to meet internal quotas. *See Stinson v. N.Y.C*, 282 F.R.D. 360, 382-83 (S.D.N.Y. 2012). "In the present case, common questions of fact and law apply to the claims of each potential plaintiff, including whether Defendants engaged in a pattern and practice of issuing summonses in the absence of probable cause, whether that practice has been motivated by a quota, whether that practice has been perpetuated by inadequate training and whether potential plaintiffs' constitutional rights have been infringed upon as a result of the NYPD's alleged summonsing practices." *Id*. at 382.

The Plaintiff in this case, like the plaintiffs in *Stinson*, has alleged that Defendants engaged in a systematized unlawful practice that gives rise to common questions of law and fact. Specifically, the common issues are: (1) whether Defendants provided improperly truncated receipts containing the expiration date of the credit card, (2) whether this conduct violates FACTA, and (3) whether Defendants' conduct was willful. The evidence necessary to answer these questions is standardized and would require establishing that it was Defendants' practice to

KS 998107.1

provide such receipts during the Class Period. Likewise, any defenses raised by Defendants would be applicable to all Class members as well. Therefore, the predominance requirement should be satisfied.

### 2.    A Class Action is Superior to Other Means of Adjudication.

Rule 23(b)(3) requires that class resolution be "superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).  Four factors are relevant to this analysis: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. FED. R. CIV. P. 23(b)(3).  These factors strongly weigh in favor of class certification.

The members of the Class will have little interest in controlling the prosecution of separate actions. First, many members of the Class are most likely unaware that Defendants' conduct placed them at greater risk of a privacy violation and identity theft, or that they have rights under FACTA. *See Kalish v. Karp & Kalamotousakis, LLP*, 246 F.R.D. 461, 464 (S.D.N.Y. 2007). Second, even if the members of the class are aware of their rights, they will have little interest in controlling the prosecution of separate actions because the potential individual recovery is small and the costs of litigation are high. *See Diaz v. Residential Credit Solutions*, No. 12-CV-3781 (ADS)(ETB), 2014 WL 279473, at*11 (E.D.N.Y. January 23, 2014) ("[T]he amount of each class members individual claims is very small so it is not likely that any of them would have a specific interest in individually controlling the prosecution of the action.").

The other factors also weigh in favor of certification.  First, there is no litigation currently pending involving similar claims against Defendants. *Kelen v. World Fin. Network Nat'l Bank*,

11

295 F.R.D. 87, 94 (S.D.N.Y 2013). Second, the Class is being certified for settlement purposes only. If a class is settlement-only, then the manageability factor is not even considered and the efficiency factor is given far less weight than usual. *See Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."). Accordingly, and for the purposes of settlement, Defendants do not dispute that the Settlement Class should be certified.

## II.     THE CLASS NOTICE PLAN IS APPROPRIATE

Federal Rule of Civil Procedure 23(c)(2) requires the court to direct to class members the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2). Notice in a class action is adequate if it is reasonable. *See Wal–Mart Stores, Inc.*, 396 F.3d at 113–14. It is reasonable if it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceeding." Id. at 114 (*citing Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir.1982)). "Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice so long as class counsel acted reasonably in choosing the means likely to inform potential class members." *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y.2008) (*citing Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir.1988)). Moreover, actual notice is not necessary. *See State of W. Va. V. Chas. Pfizer & Co.*, 440 F.2d 1079, 1090 (2d Cir. 1971) ("This court has not hesitated to approve of resort to publication as a customary substitute in another class of cases where it is not reasonably possible or practicable to give more adequate warning."); *see also In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 145, 168 (2d Cir. 1987) (holding  notice sufficient where reasonable efforts taken to identify

specific class members and advertisements were made in targeted publications as well as newspapers of general circulation).

In this case, over ninety-three (93%) percent of the class should receive actual notice by using the last known contact address, either mailing address or email address.  In particular, Defendants have identified 79,137 class members. The Defendants have mailing addresses for 74,196 class members but do not have mailing addresses for 4,941 class members. In order to address the 4,941 class members for which they do not have an address, publication notice and website notice will be paid for by Defendants.  In particular, notice will be given as follows:

1.     A direct mailed notice to 74,196 will be distributed to class members for whom the Defendants have mailing addresses or email addresses. See Exhibit 1, B for a copy of this notice.

2.     Publication notice as follows:

> You may be eligible for a $50.00 gift card as part of a class action settlement with Intimacy stores, which are designer lingerie stores located throughout the United States ("Intimacy").  A settlement has been preliminarily approved by the United States District Court for the Southern District of New York in a lawsuit involving allegations that in transactions that occurred from January 1, 2012 until [INSERT DATE CLASS IS CERTIFIED], Intimacy improperly provided some customers with credit card receipts displaying the expiration date.  For more information about the class action settlement and eligibility for recovery of a $50.00 gift card visit www._____.com.

See Exhibit 1, C.  This Publication Notice shall appear and be published in a newspaper of general publication and will appear as a 1/8 page advertisement. The Publication Notice shall run no fewer than two times in each of the impacted markets, and shall be run on two consecutive Saturdays within 30 days following entry of the Preliminary Approval Order.

3.     Additionally, the settlement administrator will post on a website the Publication Notice and the Direct Notice in addition to copies of the Complaint, the Amended Complaint in the Action, The Motion for Preliminary Approval, The Preliminary Approval Order, a copy of the

KS 998107.1

Settlement Agreement, a downloadable Claim Form, and the name, address and telephone number of the settlement administrator. The website shall be maintained by the settlement administrator until 30 days following entry of the Final Order. A Full Legal Notice will be available as well on the website and on this Court's docket.  The Full Legal Notice is attached as Exhibit 1, E.

4.      Furthermore, the Publication Notice will also be provided on Defendants' website for the entirety of the Claims Period.

5.      The website created by settlement administrator shall also include a downloadable claim form that may be completed and mailed to the Settlement Administrator.  A copy of the proposed Claims Form is attached as Exhibit 1, F.   All Class Members will be given the opportunity to object to the terms of the settlement or opt-out of the Class.  The proposed Opt-Out Form is attached as Exhibit 1, G.

Thus, Plaintiff submits that the Notice plan as set-out in the Settlement Agreement constitutes the best notice practicable under the circumstances and fully comports with the notice requirements of Rule 23 and the Due Process Clause. Plaintiff respectfully requests that the proposed Notice be approved, and that the Court order the posting and publication of Notice.

## III.     CLASS COUNSEL SHOULD BE APPOINTED.

If certification is granted then the Court must appoint class counsel. FED. R. CIV. P. 23(g). To make this determination the Court must consider the following:

> [T]he work counsel has done in identifying or investigating potential claims in the action, counsel's experience in handling class actions and other complex litigation and claims of the type asserted in the present action, counsel's knowledge in the applicable law, and the resources counsel will commit to representing the class.

*Id.* "The court may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 340 (S.D.N.Y. 2004).

KS 998107.1

Plaintiff's counsel conducted thorough due diligence prior to filing this lawsuit and has actively litigated the case since its inception.  Further, Plaintiff's counsel is currently handling several other class actions asserting similar violations of FACTA, and is constantly monitoring the legal landscape for these types of actions.  Additionally, Plaintiff's counsel has substantial broad-based multi-jurisdictional experience in other types of complex litigation as well.  A summary of Plaintiff's counsels' experience is attached as Exhibit 2.  Furthermore, Plaintiff's counsel has significant resources to commit to the vigorous and aggressive prosecution of this matter to promote the interests of Plaintiff and the putative class members.  Plaintiff's counsel is willing and prepared to provide additional information on these qualifications if so requested by this Court.  Plaintiff requests that her counsel be appointed as Class Counsel.

## IV.   PRELIMINARY APPROVAL OF SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotations omitted). The approval of a proposed class action settlement is a matter of discretion for the trial court. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995); Newberg on Class Actions § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). In exercising this discretion, courts should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). *Yuzary v. HSBC Bank USA, N.A.,* No. 12 Civ. 3693(PGG), 2013 WL 1832181, at *1 (S.D.N.Y. Apr. 30, 2013) ("In exercising this discretion, courts should give weight to the parties' consensual decision to settle class action cases because they and their counsel are in unique positions to assess potential risks.").

KS 998107.1

"A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotations omitted). If the settlement was achieved through arm's-length negotiations by experienced counsel, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, *12 (S.D.N.Y. July 27, 2007).  Here, the settlement negotiations involved pre-mediation discovery, briefing submitted to the mediator, robust argument, and weeks of negotiations.  In May of 2014, Honorable Judge John J. Hughes mediated the dispute between the parties in New York.  While the parties were not able to reach a complete resolution at the initial New York mediation, they continued their settlement efforts and negotiated for many weeks to achieve a $50 gift card for all 79,137 potential class members. Based on Class Counsel's experience in handling other consumer privacy matters, this settlement reached is reasonable.

Preliminary approval by this Court requires an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Tiro v. Pub. House Invs., LLC*, 2013 WL 2254551, at *1 (S.D.N.Y. May 22, 2013); *Clark v. Ecolab, Inc.,* 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009); Newberg § 11.25. This Court may grant preliminary settlement approval without requiring a hearing or a court appearance. *Sukhnandan v. Royal Health Care of Long Island LLC*, 2013 WL 4734818, at *1 (S.D.N.Y. Sept. 3, 2013) (granting preliminary approval based on plaintiffs' memorandum of law, attorney declaration, and exhibits). To grant preliminary approval, this Court determines whether there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir.1980). "If the proposed

16

settlement appears to fall within the range of possible approval, the court should order that the class members receive notice of the settlement." *Yuzary*, 2013 WL 1832181, at *1 (internal quotation marks and citation omitted).

In performing this "initial evaluation," the Court may consider the *Grinnell* factors that will underlie any analysis during the final approval phase of the class settlement. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). The *Grinnell* factors include: (a) the complexity, expense, and likely duration of the litigation; (b) the reaction of the class to the settlement; (c) the stage of the proceedings and the amount of discovery completed; (d) the risks of establishing liability; (e) the risks of establishing damages; (f) the risks of maintaining the class action through trial; (g) the ability of the Defendants to withstand a greater judgment; (h) the range of reasonableness of the settlement fund in light of the best possible recovery; and (i) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 495 F.2d at 462.  Here, the *Grinnell* factors support granting preliminary approval.

1. **The complexity, expense, and likely duration of the litigation; the risks of maintaining the class action through trial; and the ability of the defendants to withstand a greater judgment.**

Litigating a class action is always a difficult proposition that requires significant time and expense.  Here, there would be substantial discovery concerning the complex issue of whether Intimacy's actions in violation of FACTA were willful or constituted reckless noncompliance, including discovery concerning the time period that Intimacy was not in compliance with FACTA, what it knew about FACTA's truncation requirements, when it knew about FACTA's truncation requirements, what contractual requirements Intimacy holds between itself and merchants concerning maintaining consumer information, Intimacy's knowledge of state law requirements for the possession of consumer information, what Intimacy did in response to such knowledge,

17

what Intimacy did to identify compliance, or a lack of compliance, how Intimacy benefited from failing to comply, whether it intended to fail to comply, whether Intimacy recklessly permitted its point of sale machines to be out of compliance, and whether Intimacy has had similar privacy violations with respect to its customers in the past.

Similarly, from the beginning, Defendants would have undertaken a vigorous defense. Defendants have zealously maintained form the outset of the case that their actions did not and never could constitute a willful violation of FACTA.  Defendants' initial reaction to the Complaint in this case was to attack and move to dismiss Plaintiff's claim.  [Doc. 9, 10]  Even after Plaintiff amended its Complaint to address the alleged deficiencies raised by Defendants [Doc. 19], Defendants filed a motion to bifurcate the case seeking a phased approach to the litigation wherein "merits" discovery would be pursued first and "class" discovery would come only after a determination of whether merits discovery concerning willfulness supported a likely motion for summary judgment from Defendants.  [Doc. 47]  Plaintiff opposed this motion. [Doc. 48]  The parties agreed to mediate and reached a settlement in principle before a decision was reached on this issue, but it is clear that Defendants would have continued with this argument, conducted the "merits" discovery, filed motions for summary judgment, and continued their  defense through trial if necessary.

Further, Plaintiff or Defendants would have likely appealed any adverse ruling on both dispositive briefs and any trial.  In all, Plaintiff estimates that complete resolution of this dispute may have taken between three to five years, assuming one complete trial and one appeal.  Of course, there may have been a new trial and another appeal thus expanding the duration of the litigation.  Plaintiff considered the cost and expense of prosecuting its case and the anticipated duration of litigation in determining it was best for the class to resolve this dispute at this time.

KS 998107.1

2.      The stage of the proceedings and the amount of discovery completed.

After the complaint was filed, Defendants moved to dismiss, in response to which Plaintiff filed its amended complaint.  As discussed above, Defendants then focused on bifurcation arguments before the Court, which was fully briefed, but not decided.  Before and after the motion for bifurcation, the parties engaged in discovery. Defendants provided answers to discovery, but there was significant dispute surrounding the production of all documents associated with the alleged violation. Before a decision was reached on the bifurcation argument, the parties met and reached a settlement in principle, which took a number of months to finalize through continued negotiations.

Regarding settlement discussions, the parties engaged in an arm's length negotiation for many months, involving multiple positions and counter positions.  Initially, the parties participated in pre-mediation discussions and agreed that a resolution should be discussed with the use of a third-party neutral.  Both parties submitted potential names for mediators and eventually selected a third-party neutral.  The parties agreed to the Honorable Judge John J. Hughes who served as a United States Magistrate Judge for the District of New Jersey between 1991 and 2009. See http://www.jamsadr.com/hughes/. In connection with the mediation, the Parties shared substantial pre-mediation discovery and worked toward settlement.  For example, Intimacy provided information regarding the number of individuals in the proposed Class, the number of credit card transactions during the Class Period, the number of stores impacted by the disclosure of the credit card information, the reason for the disclosure, the length of the time the disclosure occurred, and the parameters for disclosure of the information.

The Honorable Judge Hughes requested submission of mediation statements in advance of the mediation.  Plaintiff submitted a mediation statement containing legal analysis concerning FACTA, the basis for class treatment of the case and arguments concerning application of the facts

19

provided by Defendants to Plaintiff that would support a finding on behalf of Plaintiff that Defendants had wilfully violated FACTA. Similarly, Defendants submitted a mediation statement supporting its position that it would prevail in this dispute by demonstrating that Plaintiff could not prove willfulness. Through the Honorable Judge Hughes, the parties engaged in discussions concerning the strength of the claims and defenses, as well as significant discussions concerning the applicability of case law and the potential impact it could have on each party's position. Following the day-long mediation, the parties did not completely resolve the dispute, but were able to identify parameters around which a settlement could be fashioned.

After months of further discussions concerning the specifics of settlement, including negotiations concerning the methods of notice, determination of what constitutes a valid claim and the method for class members to redeem their valid claims, the parties eventually agreed to the terms set forth in the settlement agreement and that formed the basis of this motion for preliminary approval of the settlement. In particular, the parties were able to agree on relief in the form of a gift card in the amount of $50 for each class member and direct class notice that Class Counsel deemed reasonable relief given the potential risk associated with the case and the strength of the claims against Defendants.

### 3. The reaction of the class to the settlement.

This settlement should result in strong and positive response from the class. The proposed relief pursuant to the settlement agreement is a $50 gift card that will be treated as the same as cash towards the purchase of any Intimacy items, including discount items and promotions, and which can be used to pay for any applicable tax on the purchase. Based on a representation from Intimacy's counsel, there are approximately 5009 items currently available (totaling more than 26,000 items when considering quantity, size and color) at Intimacy that could be purchased in their entirety with the $50 gift card (e.g., no additional business or dollars would be necessary with

20

Intimacy by the Class Member).  Further, because the class members will receive direct notice of the $50 gift card and receive the $50 gift card at the same address, is likely to attract a positive reaction by the class.

Additional value is created through Defendants' agreement to fund notice and administration. While an expensive process, this is reasonable given the complexity of the case, the number of parties, and the numerous store locations.  This expense is comparable to similar class action administrations.   Additionally, the cost of administration will not reduce the compensation available to the Settlement Class.

In all, there is significant value provided to the class by the settlement agreement.  In addition to the injunctive relief, the value of the settlement that could be funded by Defendants, assuming complete use of the gift cards, would be $3,956,850 in gift cards. These gift cards can be used with any transaction, can be used to pay for any applicable tax associated with the transaction, and can be combined with any other offers or discounts.  Given the direct notice, the type of relief and the flexibility in use of the gift cards, it is anticipated that there will be substantial class participation.  Further, a comprehensive website will be hosted at the Defendants' expense to serve as additional resource that should increase class participation and also submission of claims for those that do not receive direct notice.  Finally, Class Counsel will be available to assist potential Class Members with any questions they may have about the settlement.  As such, there is significant value created by this settlement, potentially in the millions of dollars, which should be sufficient for the class.

Defendants have also agreed to pay Plaintiff a class representative fee of up to $3,500, and attorneys' fees, expenses and costs in an amount up to $500,000.  See Exhibit 1 at Page 16. None of these payments reduce the value of the class relief.

      **4.**      **The risks of establishing liability; the range of reasonableness of the settlement fund in light of the best possible recovery; and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.**

For Plaintiff and the Class to prevail at trial, they would have to first obtain class certification. There is always risk in seeking certification of a contested class. While the vast majority of courts that have been presented with the issue have certified similar FACTA classes, not all of them have, and new and unique legal theories could be advanced that could result in denial of a contested certification motion.

Even if the Court were to certify a contested class, there is risk inherent in proceeding to trial, where Plaintiff will have the burden of proving that Defendants acted willfully. To prove that Defendants' conduct in providing the non-compliant receipts was "willful" within the meaning of Section 1681n of the FCRA or otherwise demonstrate willfulness through intentional acts by Defendants or its reckless disregard. If willfulness were proven, each Class Member would be entitled to a damage award between $100 and $1,000 and the possibility of punitive damages. *See* 15 U.S.C.A. § 1681. While such a recovery would surpass the value created in the proposed settlement, it would also require Plaintiff and the Class to overcome the hurdle of establishing willfulness.

While Plaintiff still believes her case is strong, she understands that Defendants may cite to cases where, as a matter of law, willfulness was found to be lacking, *see Van Straaten v. Shell Oil Products Co. LLC*, 678 F.3d 486 (7th Cir. 2012); *Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371 (3d Cir. 2012), and will present arguments and facts supporting their assertions that Defendants did not willfully print improperly truncated receipts. Specifically, Defendants likely would offer evidence for the purpose of establishing that it attempted to comply with the law and protect customers from identity theft by delegating the implementation of FACTA-compliance

software to a third party who provided assurance of proper implementation and by masking a portion of the credit card numbers and in some instances the expiration dates.  In addition, Defendants may offer evidence concerning its history of compliance with the law and that it immediately corrected the problem after learning of this lawsuit.  Such evidence could result in a ruling by the Court or a jury that Defendants did not act willfully.  *See, e.g., Aliano v. Joe Caputo and Sons—Alogonquin, Inc.*, No. 9-C-910, 2011 WL 1706061, at*4 (N.D. Ill. May 5, 2011) (holding that good-faith reliance on point-of-sale professionals factors against willfulness finding); *Gardner v. Appleton Baseball Club, Inc.*, No. 09–C–705, 2010 WL 1368663 (E.D.Wis. 2010) (attempted compliance shows lack of willfulness); *Cowley v. Burger King Corp.*, No. 07–21772, 2008 WL 8910653 (S.D. Fla. May 23, 2008) (masking portion of numbers indicates lack of willfulness).

Conversely, Plaintiff will attempt to demonstrate willfulness by establishing that Defendants were aware of FACTA, that Defendants were members of trade organizations that provided repeated notice to Defendants, that Defendants were provided repeated notice regarding FACTA's requirements by Defendants' credit card vendors, that Defendants made representations to credit card vendors regarding compliance with FACTA, that Defendants hired vendors to address FACTA issues and that Defendants recklessly disposed of consumers' receipts in such a way as to provide easy access to consumers' private credit card information. Plaintiff believes such evidence is sufficient to establish willfulness, but such a finding is certainly not a foregone conclusion.  *See Rosenthal v. Longchamp Coral Gables LLC*, 603 F.Supp.2d 1359, 1362 (S.D. Fla. 2009) (holding that fact that FACTA's requirements are well-publicized and contained in the Defendants' credit card agreement is not sufficient to show willfulness); *Gardner*, 2010 WL

23

1368663 (same).  Thus, on balance, there is certainly a risk of an adverse finding on the issue of willfulness.

Even if this Court were to certify the class and then Plaintiff was able to establish willfulness at trial, there is a question of whether a statutory (and possibly punitive) damage award of such a magnitude (up to $1000 for each transaction in violation of FACTA) could be deemed unconstitutional.  *See Beringer v. Standard Parking Corp.*, Nos. 07 C 5027, 07 C 5119, 2008 WL 4390626, at*5 (N.D. Ill. Sept. 24, 2008), (*citing Murray v. GMAC Mortg. Corp*., 434 F.3d 948, 954, 2006 WL 90081 (C.A.7 (Ill.), 2006); *Parker v. Time Warner Entertainment Co., L.P*., 331 F.3d 13, 22 (2d Cir. 2003)).  FACTA provides that for each violative receipt, the class will receive between $100 and $1,000.  15 U.S.C. § 1681n.  Assuming a contested class size of approximately 79,000, the verdict would be in the range of approximately $7.9 million to $79 million.  Plaintiff recognizes that Defendants could appeal and argue that a large verdict violates their due process rights.  *See Beringer*, 2008 WL 4390626, at *5 (noting that large damage award in FACTA case could violate due process rights).  Thus, by settling the matter, Plaintiff prevents the possibility of an adverse appellate ruling and guarantees that class members will have the opportunity to receive a $50 gift card now, rather than after a trial and a potential appeal.

## V.   ESTABLISHMENT OF A FINAL APPROVAL HEARING

The third step in the class action settlement process is the final approval hearing, at which time the Court may finally determine whether the proposed Settlement is fair, reasonable, and adequate.  See Fed. R. Civ. P. 23(e)(2).  At the final approval hearing, proponents of the Settlement may explain and describe its terms and conditions and Class Members and/or their counsel may be heard in support of or in opposition to the Settlement.  Plaintiff requests that this Court preliminarily approve the settlement as described above.  A proposed preliminary approval order

KS 998107.1

is attached as Exhibit 1, D.  Further, Plaintiff requests that this Court set a date for a final approval

hearing.  A copy of the proposed Final Approval Order is attached as Exhibit 1, A.

## VI.    CONCLUSION

"The law favors settlements of class actions no less than of other cases." *In re Gulf*

*Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 590 (S.D.N.Y.1992) (citing *Weinberger v.*

*Kendrick*, 698 F.2d 61, 73 (2d Cir.1982).); *see also* Newberg, *Class Actions* § 11.41 (citing cases).

Plaintiff respectfully submits for the foregoing reasons that this Settlement is fair, adequate and

reasonable and should be preliminarily approved.

Respectfully submitted,

SPENCER FANE BRITT & BROWNE LLP

/s/ Bryant T. Lamer
Bryant T. Lamer (*blamer@spencerfane.com*)
Joshua C. Dickinson (*jdickinson@spencerfane.com*)
1000 Walnut Street, Suite 1400
Kansas City, MO 64105
816-292-8296
Fax: 816-474-3216

THE LAW OFFICES OF SHIMSHON WEXLER, P.C.
Shimshon Wexler
216 W. 104th Street, # 129
New York, NY  10025
212-760-2400
shimshonwexler@yahoo.com

Herzfeld & Rubin, P.C.
Howard L. Wexler
125 Broad Street
New York, NY 10004
212-471-8500
Fax: 212-232-6633

*Attorneys for Plaintiff Alana Karpoff Schwartz*

KS 998107.1

TO:

Vincent P. Pozzuto, Esquire
COZEN & O'CONNOR
45 Broadway, 16th Floor
New York, New York 10006

Paul R. Dehmel
Joseph M. Pastore , III
PASTORE & DAILEY
485 Lexington Avenue, 25th Floor
New York, NY 10017
646-665-2202
Fax: 646-661-4322
Email: JPastore@psdlaw.net
Email: pdehmel@psdlaw.net

*Attorneys for Defendants*

KS 998107.1