**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
ALANA KARPOFF SCHWARTZ, Individually        :
and on behalf of a class,                   :
                                            :
                    Plaintiff,              :        13-cv-5735 (PGG)
                                            :
          v.                                :
INTIMACY IN NEW YORK, LLC; INTIMACY,        :
MANAGEMENT COMPANY, LLC,                    :
                                            :
                    Defendants.             :
-------------------------------------------------------------x
```

## MEMORANDUM IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT AND ENTRY OF FINAL JUDGMENT AND ORDER OF DISMISSAL

OP 1055308.4

# TABLE OF CONTENTS

I.      NATURE OF THE LITIGATION.................................................................................1

II.     Compliance with Preliminary Approval Order and Settlement Agreement ......................5

        A.      The Class Received Notice of the Settlement Pursuant to the Court's
                Order .................................................................................................................5

        B.      Claims Process Followed as Required Under the Preliminary Approval
                Order .................................................................................................................7

        C.      Requests for Exclusions and Objections.................................................................9

III.    The Settlement is Fair, Reasonable and Adequate and Should be Finally
        Approved.......................................................................................................................10

        A.      There is Procedural Fairness in the Settlement ......................................................10

        B.      There is Substantive Fairness in the Settlement ...................................................11

                1.      Complexity, Expense and Likely Duration of the Litigation...................12

                2.      The Class Members' Reaction to the Settlement......................................13

                3.      The Stage of the Proceedings and the Amount of Discovery
                        Completed .........................................................................................14

                4.      The Risks of Establishing Liability.........................................................15

                5.      The Risks of Establishing Damages .......................................................16

                6.      The Risks of Maintaining the Class Action through Trial........................17

                7.      The Ability of the Defendants to Withstand a Greater Judgment..............18

                8.      The Range of Reasonableness of the Settlement Fund in Light of
                        the Best Possible Recovery and the Attendants Risks of Litigation..........18

IV.     CONCLUSION..............................................................................................................19

OP 1055308.3

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Beringer v. Standard Parking Corp.*,
   Nos. 07-C-5027, 07-C-5119, 2008 WL 4390626 (N.D. Ill. 2008) .............................16, 17, 19

*D'Amato v. Deutsche Bank*,
   236 F. 3d 78 (2d. Cir. 2001)............................................................................10, 14, 15, 18

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir.1974).............................................................................11, 12, 18

*Dupler v. Costco Wholesale Corp.*,
   705 F. Supp. 2d 231 (E.D.N.Y. 2010) ...............................................................10, 11, 12

*Ebbert v. Nassau County*,
   2011 WL 6826121 (E.D.N.Y. 2011)..................................................10, 11, 12, 13, 14, 15, 17

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir.2000)............................................................................................11

*Greenspun v. Bogan*,
   492 F.2d 375 (1st Cir. 1974)...........................................................................................9

*Grimes v. Rave Motion Pictures Birmingham, L.L.C.*,
   264 F.R.D. 659 (N.D. Al. 2010) .....................................................................................16

*Grunin v. International House of Pancakes*,
   513 F.2d 114 (8th Cir. 1975) ...........................................................................................8

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
   142 F.R.D. 588 (S.D.N.Y.1992) ....................................................................................19

*Hammer v. JP's Southwestern Foods, L.L.C.*,
   267 F.R.D. 284 (W.D. Mo. 2010) ...................................................................................16

*Hanlon v. Aramark Sports, LLC*,
   No. 09-465, 2010 WL 374765 (W.D. Pa. Feb. 3, 2010)......................................................19

*In re Holocaust Victims Asset Litig.*,
   105 F.Supp.2d 139 (E.D.N.Y. 2000) ...............................................................................10

*Maley v. Del Global Techs Corp.*,
   180 F. Supp. 2d 358 (S.D.N.Y. 2002)..............................................................................13

OP 1055308.3

*Matthews v. United Retail, Inc.*,
   248 F.R.D. 210 (N.D. Ill. 2008) .......................................................................16

*Miller v. Republic Nat'l Life Ins. Co.*,
   559 F.2d 426 (5th Cir. 1977) ..............................................................................8

*Najarian v. Charlotte Russe, Inc.*,
   No. CV 07-00501 RGK, 2007 U.S. Dist. LEXIS 59879 (C.D.Cal. June 12,
   2007) ..................................................................................................................16

*In re NASDAQ Litig.*,
   187 F.R.D. at 477–78 ........................................................................................18

*In re PaineWebber Litig.*,
   171 F.R.D. at 129 ..............................................................................................18

*Reynoso v. South County Concepts*,
   No. SACV07-373-JVS, 2007 WL 4592119 (C.D. Cal. 2007) ..........................16

*Troy v. Red Lantern Inn, Inc.*,
   No. 07-C-2418, 2007 WL 4293014 (N.D. Ill. 2007) .......................................16

*Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir.2005) .................................................................................11

**Federal Statutes**

15 U.S.C. § 1681 ........................................................................................................16

15 U.S.C. § 1681, *et seq.* ............................................................................................1

15 U.S.C. § 1681c(g) ....................................................................................................1

15 U.S.C. § 1681n .........................................................................................................1

**Rules**

Fed. R. Civ. P. 23 .....................................................................................................1, 4

Fed. R. Civ. P. 23(a) ...................................................................................................4

Fed. R. Civ. P. 23(e) ..............................................................................................5, 10

**Other Authorities**

Newberg, *Class Actions* § 11.41 ...............................................................................19

OP 1055308.3

Plaintiff Alana Karpoff Schwartz ("Plaintiff"), pursuant to Rule 23 of the Federal Rules of Civil Procedure, hereby respectfully requests an Order from this Court finally approving the proposed settlement and entering a final judgment and dismissal.  In support of the Joint Motion, the Parties state as follows:

## I.        NATURE OF THE LITIGATION

In 2003, the Fair and Accurate Credit Transactions Act ("FACTA") was signed into law. The purpose of FACTA, an amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), is to protect consumers from identity theft and credit card and debit card fraud. In particular, FACTA provides that:

> [N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

15 U.S.C. § 1681c(g).  To incentivize compliance with this provision, the statute subjects willful violators of the Act to damage awards in an amount between $100 and $1,000 per violation.  15 U.S.C. § 1681n.

On August 1, 2013, Plaintiff made a purchase totaling $512.96 at an Intimacy retail store located at 1051 Third Avenue in New York, New York using her Discover card, and was provided with an electronically printed receipt.  That receipt displayed the card's expiration date.

On August 15, 2013, Plaintiff filed her Class Action Complaint against Defendants Intimacy In New York, LLC and Intimacy Management Company, LLC ("Intimacy" or "Defendants"), which own and operate Intimacy retail locations in the United States.  *See* Doc. No. 1.  In the Complaint, Plaintiff alleged that Intimacy willfully violated FACTA by failing to properly truncate the display of credit card numbers and expiration dates on electronically printed receipts provided to their customers.   Plaintiff sought statutory damages, punitive

1

damages and attorneys' fees on her behalf, and for the members of the proposed Class. Defendants filed a motion to dismiss the Complaint on October 3, 2013. *See* Doc. No. 9. Plaintiff filed her Amended Complaint on October 30, 2013. *See* Doc. No. 19. Defendants then withdrew their Motion to Dismiss, which the Court ordered withdrawn on November 6, 2013. *See* Doc. No. 21.

On December 13, 2013, Intimacy filed an answer to the amended complaint, and on December 19, 2013, Intimacy filed an amended answer to the amended complaint. *See* Doc. Nos. 38 and 39. Class Counsel issued discovery requests including interrogatories, requests for production and requests for admission to Defendants. Defendants also issued discovery to Plaintiff, which was answered by Plaintiff and Class Counsel. Before answering their discovery requests, Defendants sought to bifurcate the case wherein "merits" discovery would be pursued first and "class" discovery would come only after a determination of whether merits discovery established willfulness. Following the first phase of "merits" discovery, Defendants intended to file a motion for summary judgment. *See* Doc. No. 47. Plaintiff opposed this motion. *See* Doc. No. 48. While this motion was pending, the Defendants answered the discovery requests and the Parties worked together on identifying measures to review the tens of thousands of receipts at issue and address electronic discovery matters. Because of the potential for protracted discovery disputes regarding the production and review of these documents, the pending motions that could bifurcate the case, and the remaining discovery (production of e-discovery and significant depositions) associated with defending and prosecuting the case, the Parties agreed to engage in mediation.

On May 30, 2014, the Parties mediated the dispute at JAMS before the Honorable Judge John J. Hughes, Esq. who served as a United States Magistrate Judge for the District of New

OP 1055308.4

Jersey between 1991 and 2009.  *See* http://www.jamsadr.com/hughes/. In connection with the mediation, the Parties shared pre-mediation discovery that would assist with analysis of any settlement.  For example, Intimacy provided information regarding the number of individuals in the proposed Class, the number of credit card transactions during the Class Period, the number of stores impacted by the disclosure of the credit card information, the reason for the disclosure, the length of the time the disclosure occurred, the method by which disclosure occurred, and the possible availability of insurance coverage.  Further, through the mediator, the parties engaged in discussions concerning the strength of the claims and defenses, as well as lengthy discussions concerning the applicability of case law and the potential impact it could have on each Party's position.

As a result of discovery and arms-length negotiations during mediation and thereafter, the Parties reached a settlement that will provide Class Members with a $50 gift card that can be used at any retail location owned and operated by Intimacy in the United States.  For the vast majority of Class Members, absolutely no action is necessary to receive this benefit: if they refrain from opting-out under the terms of the settlement agreement, they will receive a $50 gift card in the mail that can be used immediately at any Intimacy retail location.  *See* Settlement Agreement, Exhibit 1 at Page 10.  Moreover, the settlement provided for robust notice to Class Members, including direct email and mail notice to over 70,000 Class Members for whom Intimacy possessed such information, in addition to publication notice in multiple national newspapers including, but not limited to, the New York Times, Chicago Tribune, Los Angeles Times, Boston Globe, Houston Chronicle, Miami Herald, and Washington Post.  Given that most class members for whom Intimacy possessed contact information have to do nothing but await their $50 gift card, and in light of the wide net cast for publication notice to those for whom

OP 1055308.4

Intimacy did not have complete contact information, the notice and claim process is of incredible value to the class.

On March 10, 2015, Plaintiff filed her Unopposed Motion for Conditional Class Certification, Appointment of Class Representative, Appointment of Class Counsel, Preliminary Approval of Class Action Settlement and Notice to Class and Setting of Final Approval Hearing. *See* Doc. No. 74.

On April 17, 2015, this Court granted Plaintiff's Unopposed Motion for Conditional Class Certification, Appointment of Class Representative, Appointment of Class Counsel, Preliminary Approval of Class Action Settlement and Notice to Class and Setting of Final Approval Hearing and set the Final Approval Hearing for August 28, 2015 ("Preliminary Approval Order"). *See* Doc No. 77. As part of that Order, this Court found preliminarily that, for purposes of settlement only, the proposed Settlement Class met the requirements of Fed. R. Civ. P. 23 and the terms of the Settlement Agreement appeared to be fair, reasonable, and adequate, and were within the range of reasonableness for a class settlement. *Id.* at ¶ 4. Furthermore, this Court found that Plaintiff would fairly and adequately protect the interests of the Class and therefore appointed Plaintiff as the representative party. *Id.* at ¶ 1. In appointing Class Counsel, this Court reviewed Class Counsel's qualifications, and found that Plaintiff's attorneys are qualified to represent the Class. *Id.* at ¶ 2.

Regarding the Settlement Agreement, which was the result of arms-length negotiations between counsel, and involved experienced mediator Honorable Judge John J. Hughes, Esq., the Court found that it resulted in settlement terms that appeared to fall within the range of possible approval. *See* Doc No. 77. at ¶4. This Court approved the Parties' Notice Plan finding it met the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process. *Id.* at ¶ 7.

OP 1055308.4

The Court further found that the Parties' proposed Notice procedures were the best notice practicable under the circumstances and fully comported with all notice requirements and the Due Process Clause. *Id.* at ¶ 7. Thus, the Court directed the Parties to provide notice of the Settlement in accordance with the plan set forth in the Settlement Agreement, which included direct notice, publication notice and website notice. *Id.* at ¶¶ 6-7.

As set forth below, the Parties have carried out the terms of both the Settlement Agreement and this Court's Preliminary Approval Order and now seeks final approval pursuant to Fed. R. Civ. P. 23(e).

## II.   Compliance with Preliminary Approval Order and Settlement Agreement

### A.   The Class Received Notice of the Settlement Pursuant to the Court's Order

In accordance with the Court's Preliminary Approval Order, notice was published, and was mailed or emailed directly to 72,596 Class Members. *See* Doc. No. 79, Declaration of Jennifer Keogh, Class Administrator, ¶ 8. Accounting for returned or undeliverable mail, the total number of class members who received direct notice is 70,096. *Id.* at ¶ 12. Based on this information, over 88% of the class received mailed or emailed notice. *Id.* Again, for those Class Members that received direct notice by mail or email, they need to do nothing more than await their $50 gift card from Intimacy. Through May 31, 2015, the cost for such targeted and comprehensive notice is $238,520.41, none of which has reduced the funds available to the Class. By Class Member, the cost of this notice is approximately $3.50 per Class Member. Based on the direct notice figures alone, Intimacy will mail over $3,504,800 in relief to Class Members.

In order to reach those remaining Class Members for whom direct notice was not possible or for whom mail and email was undeliverable, Intimacy published the notice ordered by the Court in numerous national newspapers across the United States. *See* Doc. No. 79, ¶ 13. The

OP 1055308.4

combined total of the daily circulation for these newspapers was 4,217,686, and such notice was published twice. *Id.* In particular, the notice was published on two consecutive Saturdays as a 1/8 page advertisement in newspapers in each of the impacted markets. *Id.* The publication notice appeared in the following publications on the following dates:

| Publication | Daily Circulation | Publication Dates |
|---|---|---|
| *New York Times* | 689,165 | May 2, 2015/May 9, 2015 |
| *Newark Star-Ledger* | 284,020 | May 2, 2015/May 9, 2015 |
| *Atlanta Journal Constitution* | 221,756 | May 2, 2015/May 9, 2015 |
| *Chicago Tribune* | 438,935 | May 2, 2015/May 9, 2015 |
| *Los Angeles Times* | 628,910 | May 2, 2015/May 9, 2015 |
| *Boston Globe* | 252,311 | May 2, 2015/May 9, 2015 |
| *Houston Chronicle* | 307,806 | May 2, 2015/May 9, 2015 |
| *Miami Herald* | 118,193 | May 2, 2015/May 9, 2015 |
| *Orange County Register* | 164,691 | May 2, 2015/May 9, 2015 |
| *Philadelphia Inquirer/Daily News*[1] | 278,723 | May 2, 2015/May 9, 2015 |
| *San Diego Union-Tribune* | 214,585 | May 2, 2015/May 9, 2015 |
| *Arizona Republic* | 217,231 | May 2, 2015/May 9, 2015 |
| *Washington Post* | 401,360 | May 2, 2015/May 9, 2015 |
| **Totals** | **4,217,686** | |

*Id.*

---

[1] The Publication Notice in the *Daily News* was published on May 1, 2015 and May 8, 2015. The Publication Notice was also published in the *Philadelphia Inquirer* on May 2, 2015 and May 9, 2015.

OP 1055308.4

In addition, notice was conveyed on a website explaining the settlement. *See* Doc. No. 79, ¶ 13. On April 24, 2015, the Class Administrator established an operational website (www.IntimacyFACTASettlement.com) dedicated to the Settlement to provide information to Class Members and to answer frequently asked questions for visitors. *Id.* The website has been operational and available 24 hours a day since April 24, and has allowed visitors to review the Complaint, Amended Complaint, Motion for Preliminary Approval, Preliminary Approval Order, and the Settlement Agreement. *Id.* Moreover, it allows any visitor to download a personalized Claim Form. *Id*. As of July 14, 2015, the website has received 3,554 visits. *Id.*

On April 24, 2015, the Class Administrator implemented and published an operational telephone number to accommodate inquiries regarding the Settlement. *See* Doc. No. 79, ¶ 16. This telephone number, 1-877-940-1503, which is equipped with an Interactive Voice Response ("IVR") system, has since provided callers with the ability to listen to important information about the Settlement and to request copies of the Notice Packet and Claim Form 24 hours a day, seven days a week. *Id.* If callers have additional questions, this number allows them to speak with a customer representative Monday through Friday, between the hours of 8:00 a.m. and 5:00 p.m. Eastern Time. *Id.* The Class Administrator will continue to maintain and update the IVR throughout the administration of the Settlement. *Id.*

### B.   Claims Process Followed as Required Under the Preliminary Approval Order

The Parties have made it simple and easy for Class Members to submit claims. For those 70,096 Class Members who the Class Administrator was able to reach directly by mail or email, no action is necessary: if they refrain from opting-out under the terms of this Settlement Agreement, they will receive a $50 gift card in the mail that can be used immediately at any Intimacy retail location. *See* Settlement Agreement, Exhibit 1 at Page 10. In order to address the

OP 1055308.4

remaining Class Members for whom the class administrator did not have addresses, Intimacy and the Class Administrator have provided the significant and far-reaching publication notice and website notice described above.

This afforded Class Members who did not receive direct notice, but nevertheless wanted to participate in the Settlement, with the means to complete claim forms, copies of which were available on the website at www.IntimacyFACTASettlement.com, as well as in the Notice Packet which was readily provided to anyone identifying themselves as Class Members pursuant to publication notice, the website notice, or through use of the toll free number. *See* Doc. No. 79, ¶ 17. Specifically, to submit a claim, Class Member provided contact information, location of the store from which their purchase was made, the method of payment, the last four digits of their credit card used for the purchase or the expiration date for the credit card used for their purchase, and/or the price of the purchase and/or date of the purchase. *Id.* The Class Administrator received a total of 282 timely claims. *Id.* 143 of the timely claims received were submitted by individuals who also received direct notice by mail or email. *Id.* Seven of the timely claims received were submitted by individuals whose names were Class Members that did not receive direct notice by mail or email because contact information was unavailable or the notices sent to those individuals were returned to the class administrator as undeliverable. *Id.* 132 of the claims received were submitted by individuals whose names or contact information were not in the class member data provided to the Class Administrator. *Id.*

Four months will have elapsed between the posting of Notice and the Final Approval Hearing.  This period is significantly longer than that deemed adequate in other class action settlements.  *See Grunin v. International House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975) (19 days between notice mailings and settlement hearing sufficient); *Miller v. Republic Nat'l Life*

*Ins. Co.*, 559 F.2d 426, 429 (5th Cir. 1977) (four weeks between notice and settlement hearing sufficient); *Greenspun v. Bogan*, 492 F.2d 375, 378 (1st Cir. 1974) (four weeks between notice and settlement hearing sufficient). Thus, the Parties submit that the notice plan as carried out pursuant to this Court's Preliminary Approval Order provided the best notice practicable under the circumstances and fully complied with the notice requirements of Rule 23 and the Due Process Clause.

### C.      Requests for Exclusions and Objections

Class Members were required to submit to the Class Administrator any written request for exclusion within ten (10) days of July 6, 2015, and any such requests for exclusion were then to be filed with the Court not later than July 21, 2015. *See* Doc. No. 77, ¶¶ 9-10. To date, of the 79,389 total Class Members, only nineteen (19) have submitted exclusion requests.  This represents .02 percent of the entire class.  *See* Doc. No. 79, ¶ 21. Further, to date there has only been one (1) objection submitted.  *See* Doc. No. 79, ¶ 22. Class Members intending to object to the Settlement are to file such objections and serve the Parties on or before July 29, 2015 (30 days prior to the Final Approval Hearing). *Id*, ¶ 8.

During the notice period, the Attorneys General from the states of California, Michigan, Texas, New York, and Tennessee contacted the parties with multiple questions concerning the Settlement preliminarily approved by this Court. The Parties held a conference call with the Attorneys General and answered multiple questions raised during the call and in preceding correspondence.  This response required significant research and time to address the issues raised by the Attorneys General, but the Parties believe they have satisfactorily answered the questions of the Attorneys General.  While no objection from the Attorneys General has been filed to date, and the Parties have worked diligently to resolve all questions posed by the Attorneys General,

OP 1055308.4

pursuant to direction by the Attorneys General in their correspondence to the Parties, the above factual description and coordination by the Attorneys General and the Parties should not be construed as an affirmative approval or support for terms of the Settlement by the Attorneys General.

### III.   The Settlement is Fair, Reasonable and Adequate and Should be Finally Approved

A court may approve a class action settlement after holding a hearing and finding that the settlement is "fair, reasonable and adequate".  Fed. R. Civ. P. 23(e).  To determine whether a settlement is fair, reasonable, and adequate a district court must evaluate its procedural and substantive fairness.  *See D'Amato v. Deutsche Bank*, 236 F. 3d 78, 87 (2d. Cir. 2001); *In re Holocaust Victims Asset Litig.*, 105 F.Supp.2d 139, 145 (E.D.N.Y. 2000).  Procedural fairness evaluates the negotiations leading to the settlement while the court also reviews the substantive terms of the settlement.  *Dupler v. Costco Wholesale Corp.,* 705 F. Supp. 2d 231, 238 (E.D.N.Y. 2010).

#### A.        There is Procedural Fairness in the Settlement

Regarding procedural fairness, a court reviewing a proposed settlement "must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations and that plaintiffs' counsel ... possessed the [necessary] experience and ability, and have engaged in the discovery necessary to effectively represent the class's interests." *D'Amato*, 236 F.3d at 85.  This Court may presume that "fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Ebbert v. Nassau County*, 2011 WL 6826121, at *7, (E.D.N.Y. 2011) (quoting Manual for Complex Litigation, Third, § 30.42 (1995); *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir.2005)).

OP 1055308.4

Here, after litigating the case through a motion to dismiss, conducting significant discovery, and litigating Defendants' requests to bifurcate discovery to address merits and class issues separately, the Parties determined it would be in their respective interests to attempt mediation. The Parties engaged the Honorable Judge John J. Hughes, Esq. who served as a United States Magistrate Judge for the District of New Jersey between 1991 and 2009.  *See* http://www.jamsadr.com/hughes/. Through the mediator, the Parties engaged in discussions concerning the strength of the claims and defenses, as well as protracted discussions concerning the applicability of case law and the potential impact it could have on each Party's position. Although the case was not settled at the mediation, the Parties continued to work with Judge Hughes (and with each other) for weeks after the mediation until a settlement was finally obtained.  Once the terms were agreed to, the Parties exchanged multiple drafts of the settlement filings until submission of the final settlement documents with this Court.  Therefore, because this Settlement between the Parties was reached after substantive litigation concerning the merits of Plaintiff's claims, significant discovery, and extensive negotiations conducted at arms-length and with the assistance of a highly skilled mediator, this Court should find that that procedural fairness does exist with respect to the settlement.  *See Ebbert*, 2011 WL 6826121, at *8; *Dupler*, 705 F. Supp. 2d at 238.

### B.      There is Substantive Fairness in the Settlement

The settlement is substantively fair.  The Court should examine fairness in light of the strong judicial policy favoring the settlement of class action suits.  *Wal–Mart Stores,* 396 F.3d at 117.  Specifically, Courts determine substantive fairness by evaluating the *Grinnell* factors.  *See Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir.1974) abrogated on other grounds by *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir.2000); *Wal–Mart Stores,* 396 F.3d at

OP 1055308.4

117; *Dupler,* 705 F. Supp. 2d at 238.  The *Grinnell* factors are (a) the complexity, expense, and likely duration of the litigation; (b) the reaction of the class to the settlement; (c) the stage of the proceedings and the amount of discovery completed; (d) the risks of establishing liability; (e) the risks of establishing damages; (f) the risks of maintaining the class action through trial; (g) the ability of the defendant to withstand a greater judgment; (h) the range of reasonableness of the settlement fund in light of the best possible recovery; and (i) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. In this case the *Grinnell* factors support a determination of substantive fairness with respect to the Settlement.

### 1.     Complexity, Expense and Likely Duration of the Litigation

Class actions are by their nature complex.  *See Ebbert*, 2011 WL 6826121, at *9. With respect to a consumer class action concerning this particular statutory claim, the complexity surrounds Defendants' defenses, including whether there is a basis to establish willfulness and how this Court would have determined the definition of willfulness. To address this complex issue and to develop the case for a thorough mediation, there was discovery exchanged regarding the number of individuals in the Class, the number of credit/debit card transactions during the Class Period, the number of stores impacted by the disclosure of the credit card information, the reason for the disclosure, the length of the time the disclosure occurred, and the parameters for disclosure of the information.

Plaintiff's counsel received and anticipated a robust and strong defense by Defendants' counsel, who are highly experienced in this area.  From the beginning of the case Defendants' counsel litigated with vigor, including filing the request for pre-motion conference (*See* Doc. No. 4), and challenging the Amended Complaint with a Motion to Dismiss (*See* Doc. No. 9), which

OP 1055308.4

was subsequently withdrawn by Defendants.  Defendants subsequently pursued bifurcated discovery to address the "merits" and "class" based discovery separately, which was contested by Plaintiff. If bifurcation were to have been granted, Defendants intended to pursue summary judgment on the merits before proceeding with class discovery and class certification challenges. Based on the interactions with Defendants' counsel, their experience, their legal acumen and knowledge of consumer class actions and this developing area of the law, and their highly skilled briefing, Plaintiff's counsel anticipated (and received during negotiations) a strong, long and expensive defense by Defendants' counsel.  Further, Plaintiff or Defendants would have likely appealed any adverse ruling, thus requiring a total time to litigate the case of three to five years. The settlement provided a "substantial and tangible present recovery" to the Class Members now, rather than at a later date potentially five years away, if ever.  *Maley v. Del Global Techs Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002); *Ebbert*, 2011 WL 6826121, at *9.  Therefore, this factor weighs in favor of settlement.

### 2.    The Class Members' Reaction to the Settlement

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighted in considering its adequacy…In fact, the lack of objections may well evidence the fairness of the [s]ettlement." *Ebbert*, 2011 WL 6826121, at *10 quoting *Maley*, 186 F. Supp. 2d at 362.  Here, to date there has been only one objection. *See* Doc. No. 79, ¶ 22. Thus far, of the 70,096 Class Members that have received direct notice, only 19 have submitted exclusion requests. *See* Doc. No. 79, ¶ 21. Plaintiff's counsel has received numerous calls from Class Members stating their support for the Settlement and inquiring as to when they will receive the $50 gift card.  Given the direct notice provided to 70,096 Class Members, and the fact that payment of class administration costs and attorneys' fees do not reduce the value

13

provided to the Class, the Parties note that the Class Members have reacted, and likely will continue to react, favorably to the settlement relief.  In total, Intimacy will mail gift cards with a value of over $3,504,800 to Class Members.  This factor weighs in favor of final approval of the Settlement.

### 3.     The Stage of the Proceedings and the Amount of Discovery Completed

After the Complaint was filed, the Parties engaged in briefing concerning Defendants' pre-filing letter to this Court after which a Motion to Dismiss was filed (*See* Doc. Nos. 9, 10). The Parties litigated the Motion to Dismiss and following discussions with the Court, the Defendants withdrew their Motion to Dismiss.  (*See* Doc. No. 21) Subsequently, Defendants filed a motion to bifurcate discovery and focus the case first on "merits" discovery before proceeding with class discovery.  (*See* Doc. No. 47)  Defendants would likely have moved for summary judgment on the merits before moving forward with attacking the class certification process. Plaintiff opposed the motion and submitted it to the Court for a decision.  (*See* Doc. No. 48)  Substantial discovery was exchanged, to which the Parties responded and Plaintiff's counsel conducted a significant document review.  The Parties then began the process of settlement discussions through the mediation described above.  Defendants then withdrew their motion to bifurcate after a settlement was reached.  (*See* Doc. No. 63)

Class Counsel obtained sufficient information from Defendants through discovery to properly analyze the merits of the case in order to enter into a settlement.  *Ebbert*, 2011 WL 6826121, at *10.  While the case was not nearing trial or at an advanced stage of litigation, the discovery obtained was all that would have been necessary to take the case to trial, except for discovery concerning willfulness.  *See D'Amato*, 236 F. 3d at 87 (lack of formal discovery did not impact support for final approval of settlement where extensive exchange of documents and

14

information). In particular, there was discovery concerning the number of individuals in the Class, the number of credit/debit card transactions during the Class Period, the number of stores impacted by the disclosure of the credit card information, the reason for the disclosure, the length of the time the disclosure occurred, and the parameters for disclosure of the information. As a result of this information, Class Counsel were "able to assess their position, having had sufficient time to realistically evaluate the strengths and weaknesses of their claims and the fairness of the proposed settlement." *Id.*

Using the information obtained during directed discovery, a mediation was held, which resulted in a preliminary settlement, and the final details of this settlement were achieved through several months of extensive negotiations between the Parties.  Because the Parties obtained significant information that could be used to fully evaluate the strengths and weaknesses of their respective cases, the state of proceedings favors final approval of the Settlement.

### 4.    The Risks of Establishing Liability

This factor supports final approval if the settlement "resolves this significant and cumulative uncertainty in a manner favorable for all."  *Ebbert*, 2011 WL 6826121, at *11. For Plaintiff and the Class to prevail at trial, they would have had to defeat Defendants' motion to bifurcate discovery and, based on the representations in Defendants' filing, a forthcoming summary judgment motion regarding merits liability.  Assuming Plaintiff survived any such motion for summary judgment on merits, Plaintiff would then have had to conduct class discovery and obtain class certification, which Defendants would have certainly contested. There is always risk in seeking certification of a contested class.  While the vast majority of

courts that have been presented with the issue have certified similar FACTA classes,[2] not all of them have,[3] and new and unique legal theories could be advanced that could result in denial of a contested certification motion.  Even if the Court were to certify a contested class, there is risk inherent in proceeding to trial, where Plaintiff would have the burden of proving that Defendants acted willfully.  Proving willfulness against Defendants would have required Class Counsel to put on substantial evidence concerning Defendants' knowledge of FACTA, representations and relationships with credit card vendors and actions taken by Defendants after learning of FACTA. This evidence would have required further discovery and lengthy testimony, including discovery and trial testimony by experts.  Finally, even following trial and a successful outcome, the Class would have to wait for post-trial motions and an appeal.  This would cause continued uncertainty for the Class until the proceedings were completed.  The settlement resolves the dispute now, once and for all, without additional litigation and the risk of loss by the Class.  Therefore, this factor supports final approval.

### 5.   The Risks of Establishing Damages

If willfulness were proven, each Class Member would be entitled to a damage award between $100 and $1,000, as well as the possibility of punitive damages.  *See* 15 U.S.C.A. § 1681.  In order to reach this level of damages, Plaintiff would have to win class certification and establish willfulness at trial.  Establishing willfulness would likely require expert testimony. Further, even if this Court were to certify the Class and then Plaintiff was able to establish willfulness at trial, there is a question of whether a statutory (and possibly punitive) damage

---

[2] *See, e.g., Hammer v. JP's Southwestern Foods, L.L.C.*, 267 F.R.D. 284 (W.D. Mo. 2010); *Beringer v. Standard Parking Corp.*, Nos. 07-C-5027, 07-C-5119, 2008 WL 4390626 (N.D. Ill. 2008); *Matthews v. United Retail, Inc.*, 248 F.R.D. 210, 216 (N.D. Ill. 2008); *Reynoso v. South County Concepts*, No. SACV07-373-JVS, 2007 WL 4592119, *4 (C.D. Cal. 2007); *Troy v. Red Lantern Inn, Inc.*, No. 07-C-2418, 2007 WL 4293014 (N.D. Ill. 2007).

[3] *See Grimes v. Rave Motion Pictures Birmingham, L.L.C.*, 264 F.R.D. 659, 663 (N.D. Al. 2010); *Najarian v. Charlotte Russe, Inc.*, No. CV 07-00501 RGK (CT), 2007 U.S. Dist. LEXIS 59879 (C.D.Cal. June 12, 2007).

OP 1055308.4

award of such a magnitude (up to $1000 for each transaction in violation of FACTA) could be upheld. *See Beringer v. Standard Parking Corp.*, Nos. 07 C 5027, 07 C 5119, 2008 WL 4390626, at *5 (N.D. Ill. Sept. 24, 2008), (citing *Murray v. GMAC Mortg. Corp.*, 434 F.3d at 954; *Parker v. Time Warner Entertainment Co., L.P.*, 331 F.3d 13, 22 (2d Cir. 2003)).  The settlement provides each of the approximate 70,096 Class Members that have received direct notice or submitted a claim form with a $50 gift card now, whereas there existed substantial risk that Plaintiff could not have proven willfulness in order to obtain the statutory damages available under FACTA. Therefore, this factor supports final approval because the settlement avoided the risk in proving damages while providing immediate and significant relief to each Class Member.

### 6. The Risks of Maintaining the Class Action through Trial

The Class has been certified for settlement purposes only.  If this case did not settle and the Parties continued with litigation, Class Counsel anticipated that Defendants would have renewed their motion to bifurcate discovery and, based on the representations in Defendants' filing, instituted a summary judgment motion regarding merits liability. Further, Class Counsel anticipated that Defendants would have vigorously contested class certification.  The expense, time and uncertainty associated with litigating the motion to bifurcate discovery, defending against a summary judgment motion on the merits of Plaintiff's claims, and submitting briefing regarding class certification supports obtaining a settlement now.  Moreover, even if certification were granted, on appeal Class Counsel is of the opinion that Defendants would have sought to have the class decertified.  *Ebbert*, 2011 WL 6826121, at *12.  Considering the risk and time associated with litigating these issues, this factor supports final approval of the settlement obtained and provided to the Class.

17

### 7.      The Ability of the Defendants to Withstand a Greater Judgment

If this case were to proceed through trial and judgment, the potential statutory exposure could range from $100 to $1000 for each of the potential 79,137 Class Members.  Therefore the range of potential damages may have been from $7,913,700 to $79,137,000.  Even a judgment on the low end of that spectrum could have sent Defendants into bankruptcy. Moreover, "the fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate." *In re PaineWebber Litig.,* 171 F.R.D. at 129; *see also In re NASDAQ Litig.,* 187 F.R.D. at 477–78. This is especially true where, as here, the other *Grinnell* factors weigh heavily in favor of settlement approval. *See D'Amato,* 236 F.3d at 86 (no abuse of discretion to approve settlement where, despite defendants' ability to withstand higher judgment, settlement was fair in light of other *Grinnell* factors). Therefore, this factor supports final approval of the settlement because the Defendants are unlikely to have the financial ability to pay a higher statutory judgment within the range discussed above.

### 8.      The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendants Risks of Litigation

The Settlement Agreement provides substantial value to the Class. Each Class Member will receive a $50 gift card that can be used at any retail location owned and operated by Intimacy in the United States.   This is a direct economic benefit to Class Members of approximately $3,504,800.   Moreover, the Class relief is not impacted by the costs of administration and direct notice to each Class Member ($238,520.41 incurred through May 31, 2015), nor is it impacted by attorneys' fees, which Defendants have agreed to pay.  None of the Class Members' funding is reduced by these costs. Further, the Class obtained injunctive relief and Defendants are now in FACTA compliance further protecting the privacy rights of consumers throughout the United States.

OP 1055308.4

While a judgment against Defendants could range from $7,913,700 to $79,137,000, and there is a potential that Defendants would litigate more and then settle for a larger amount as the case progresses, Plaintiff anticipated significant litigation challenges during the life of the case, including attacks regarding bifurcation, dispositive briefing on merits issues before class certification, and further litigation involving class certification. Even if a judgment of this size was obtained, Defendants may have challenged the size of any award as a due process violation. *See Beringer v. Standard Parking Corp.,* Nos. 07 C 5027, 07 C 5119, 2008 WL 4390626, at*5 (N.D. Ill. Sept. 24, 2008) (noting that large damage award in FACTA case could violate due process rights); *Hanlon v. Aramark Sports, LLC*, No. 09-465, 2010 WL 374765, at **4-5 (W.D. Pa. Feb. 3, 2010). Further, the likelihood of recovering this amount against Defendants and the attendant litigation risks counsel that the obtained settlement is reasonable in light of the best possible recovery and therefore this factor supports final approval.

## IV.    CONCLUSION

"The law favors settlements of class actions no less than of other cases." *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 590 (S.D.N.Y.1992) (citing *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir.1982).); *see also* Newberg, *Class Actions* § 11.41 (citing cases). The Parties jointly submit that this Settlement is fair, adequate and reasonable and should be finally approved.  Plaintiff respectfully requests an order from this Court granting final approval of the Settlement Agreement, entry of final judgment and dismissal and, for the reasons set forth in a separate filing, payment of attorneys' fees, costs and a class representative fee.

OP 1055308.4

Dated: New York, New York – July 23, 2015

Respectfully submitted,

SPENCER FANE BRITT & BROWNE LLP

/s/ Joshua C. Dickinson
Bryant T. Lamer (*blamer@spencerfane.com*)
Joshua C. Dickinson (*jdickinson@spencerfane.com*)
1000 Walnut Street, Suite 1400
Kansas City, MO 64105
Telephone: 816-292-8296 -- Fax:  816-474-3216

THE LAW OFFICES OF SHIMSHON WEXLER, P.C.
Shimshon Wexler
216 W. 104th Street, # 129
New York, NY  10025
212-760-2400
shimshonwexler@yahoo.com

Herzfeld & Rubin, P.C.
Howard L. Wexler
125 Broad Street
New York, NY 10004
Telephone: 212-471-8500  -- Fax: 212-232-6633

*Attorneys for Plaintiff Alana Karpoff Schwartz*

COZEN & O'CONNOR

/s/ Vincent P. Pozzuto
Vincent P. Pozzuto, Esquire
COZEN & O'CONNOR
45 Broadway, 16th Floor
New York, New York 10006

Paul R. Dehmel
Joseph M. Pastore, III
PASTORE & DAILEY
485 Lexington Avenue, 25th Floor
New York, NY 10017
Telephone: 646-665-2202 -- Fax: 646-661-4322
Email: JPastore@psdlaw.net
Email: pdehmel@psdlaw.net

*Attorneys for Defendants*

OP 1055308.4